EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Wilfredo Ortiz Colón<br><br>Recurrido | Certiorari<br><br>2021 TSPR 71<br><br>206 DPR ____ |

Número del Caso: CC-2019-334


Fecha: 24 de mayo de 2021


Tribunal de Apelaciones:

     Panel VIII


Oficina del Procurador General:

     Lcdo. Isaías Sánchez Báez
     Procurador General

     Lcda. Lorena Cortés Rivera
     Subprocuradora General

     Lcda. Liza M. Delgado González
     Procuradora General Auxiliar


Abogados de la parte recurrida:

     Lcdo. Oscar García Rivera
     Lcdo. Julio Eduardo Torres


Materia: Derecho Procesal Penal: Cuando el foro apelativo intermedio tenga ante su consideración una apelación en la cual se planteen tanto errores de insuficiencia de la prueba como que el veredicto del jurado no fue unánime, el Tribunal debe aplicar un escrutinio de dos partes.  En primer lugar, debe evaluar la alegación de insuficiencia de la prueba. De esta ser meritoria, entonces procede la absolución del acusado y no se le puede acusar de nuevo por los mismos delitos. Ahora bien, si la alegación de insuficiencia de la prueba es inmeritoria, procede el segundo paso; es decir, atender el error de derecho sobre la falta de unanimidad del jurado y ordenar un nuevo juicio a la luz de lo resuelto en Pueblo v. Torres Rivera, 204 DPR 288 (2020).


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Peticionario

        v.

                                  CC-2019-0334

Wilfredo Ortiz Colón

     Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Martínez Torres

En San Juan, Puerto Rico, a 24 de mayo de 2021.

Nos corresponde resolver si para determinar que la transcripción de un juicio está completa es necesario incluir en ella lo conversado en las conferencias en el estrado.

Si una parte interesa preservar lo discutido en el estrado que no consta para el récord, esta puede verterlo en corte abierta. De igual forma, si el juez autoriza que los fundamentos de una objeción se discutan en una conferencia en el estrado, cualquier parte interesada puede solicitar al juez que autorice que prosiga la grabación del récord. De ese modo se preserva lo allí conversado. Luego de analizar el

audio en este caso, concluimos que no está presente ninguna de esas situaciones, por lo que no es necesario incluir en la transcripción del juicio lo conversado en el estrado.

El Tribunal de Apelaciones se equivocó al ordenar un nuevo juicio porque la transcripción no contenía las conversaciones en el estrado. Revocamos y devolvemos el caso a ese foro para que lo evalúe en los méritos, con las instrucciones que constan en la Parte VI de esta Opinión.

I

El Sr. Wilfredo Ortiz Colón (señor Ortiz Colón) fue acusado por el delito de asesinato en primer grado y violación de los Art. 5.07 y Art. 5.15 de la Ley de Armas, 25 LPRA sec. 458f y 458n. Un jurado lo encontró culpable del delito de asesinato en primer grado, por votación de 9-3. Respecto a las violaciones de la Ley de Armas, el veredicto fue unánime. Así, el 14 de septiembre de 2012, el Tribunal de Primera Instancia lo sentenció a una condena de 150 años de prisión. Inconforme, el señor Ortiz Colón apeló ante el Tribunal de Apelaciones. El foro apelativo intermedio concluyó que el recurso de apelación se presentó fuera del término jurisdiccional. Igual suerte sufrió la correspondiente reconsideración.

Tras dicha determinación, el señor Ortiz Colón presentó ante el foro primario una moción al amparo de la Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, R.192.1, aduciendo inadecuada asistencia de representación legal en la etapa

apelativa. Solicitó que se le resentenciara para poder apelar oportunamente. El foro primario denegó dicha solicitud.

Luego de varios trámites procesales, el señor Ortiz Colón acudió ante nos mediante un recurso de certiorari. Allí nos solicitó que revocáramos la determinación del foro apelativo intermedio y permitiéramos que el foro primario lo resentenciara. Dictamos una sentencia dejando sin efecto la sentencia condenatoria impuesta contra el señor Ortiz Colón y devolvimos el caso al foro primario para que se le resentenciara. En cumplimiento con lo resuelto, el foro primario resentenció al señor Ortiz Colón bajo los mismos términos de la sentencia original.

Con el beneficio del nuevo término, el señor Ortiz Colón presentó una nueva apelación. Allí, planteó doce señalamientos de error, incluyendo planteamientos de insuficiencia de la prueba presentada, admisión errónea de evidencia y violación del debido proceso de ley. Entre los errores que señaló está la inconstitucionalidad del veredicto 9 a 3 en el caso por la infracción del Art. 106 del Código Penal de 2004, supra.

De igual manera, el señor Ortiz Colón presentó una Moción sobre reproducción de la prueba oral, en la que adujo que la presentación de una trascripción era el método más rápido y eficiente para la reproducción de la prueba oral. Tras evaluar esa solicitud, el foro primario autorizó la presentación de la transcripción de la prueba oral.

Así las cosas, el señor Ortiz Colón presentó una moción de nuevo juicio ante el Tribunal de Primera Instancia. Alegó que la transcripción originalmente realizada del juicio estaba incompleta, pues no contenía las conferencias en el estrado. **Asimismo, expuso que la grabación del juicio no podía utilizarse para completar la transcripción, debido a que, de las ciento veinticinco conferencias en el estrado identificadas, en más de veinticinco de ellas no se podía escuchar nada o era incomprensible lo expresado.** Concurrentemente, el señor Ortiz Colón presentó una moción ante el Tribunal de Apelaciones para que autorizara al foro primario a considerar la moción de nuevo juicio.

El 18 de octubre de 2016, el Tribunal de Apelaciones ordenó la paralización de la apelación ante su consideración y autorizó que se considerara la moción de nuevo juicio. Así, el 16 de mayo de 2017, el Tribunal de Primera Instancia celebró la vista correspondiente. En ella, el señor Ortiz Colón intentó presentar el testimonio de uno de sus representantes legales, el Lcdo. Oscar García Rivera. El testigo tenía la intención de narrar las gestiones realizadas para tratar de completar la transcripción de la prueba y argumentar que las lagunas en la transcripción original le impedían conocer las objeciones que levantó el primer representante legal del señor Ortiz Colón. Sin embargo, el foro primario no permitió el testimonio del licenciado García Rivera, por lo que los abogados del señor Ortiz Colón realizaron una oferta de prueba. Culminada la vista, el

Tribunal de Primera Instancia denegó la solicitud de nuevo juicio.

El 9 de junio de 2017, el señor Ortiz Colón presentó un recurso de certiorari ante el Tribunal de Apelaciones. Arguyó que el foro primario erró al no permitir el testimonio del licenciado García Rivera y al denegar la moción de nuevo juicio a pesar de la imposibilidad de realizar una transcripción de la prueba que incluyera lo hablado en las conferencias en el estrado. Posteriormente, este recurso fue consolidado con la apelación anteriormente presentada.

El 20 de febrero de 2019, el Tribunal de Apelaciones notificó una resolución en la que revocó la resolución recurrida y ordenó la celebración de un nuevo juicio. El foro apelativo intermedio se basó en el segundo estándar establecido en United States v. Selva, infra, como razón por la cual procedía la celebración de un nuevo juicio. ("En este caso, es forzoso concluir que estamos ante el segundo escenario que contempla el estándar adoptado en United States v. Selva, [infra], pues los actuales abogados del señor Ortiz Colon no fueron quienes lo representaron durante el juicio…".). Sentencia del TA, pág. 21, Ap., pág. 24. Además, resolvió que las fuentes alternas disponibles para crear una exposición narrativa de las argumentaciones en el estrado, tales como las notas del Ministerio Público y del primer representante legal del señor Ortiz Colón, eran inadecuadas y le pondrían en desventaja. El 7 de marzo de 2019, el

Ministerio Público presentó una moción de reconsideración. Esta fue denegada.

Insatisfecho con lo resuelto por el Tribunal de Apelaciones, el Ministerio Público acude ante nos mediante un recurso de _certiorari_. En él solicita que revoquemos el dictamen recurrido argumentando que el Tribunal de Apelaciones erró al ordenar un nuevo juicio por la ausencia del audio de las conversaciones en el estrado. Aduce que el recurrido lo **solicita sin demostrar que los errores en la transcripción le provocaron un perjuicio específico que le impidiera perfeccionar la apelación**. Alega que el foro apelativo intermedio erró al concluir que procede la celebración de un nuevo juicio porque "en ninguna de las conferencias ante el estrado, se pudo descifrar lo argumentado por cada una de las partes, ni las expresiones del juez", aunque en las regrabaciones de dichas conferencias se puede escuchar o descifrar lo que está ocurriendo en el estrado. Sol. Cert., pág. 8.

Trabada así la controversia, y expedido el auto solicitado, procedemos a resolver.

II

Nuestro ordenamiento permite que un tribunal conceda un nuevo juicio, ya sea a instancia propia, con el consentimiento del acusado, o a petición de este. Regla 187 de Procedimiento Criminal, 34 LPRA Ap. II. En esa dirección, hemos sido enfáticos en que la concesión de un nuevo juicio descansa en la sana discreción del tribunal sentenciador y que dicha

determinación no debe alterarse a menos que se demuestre un claro e inequívoco abuso de discreción. Pueblo v. Rodríguez, 193 DPR 987, 998 (2015); Pueblo v. Velázquez Colón, 174 DPR 304, 324 (2008); Pueblo v. Marcano Parrilla, 168 DPR 721, 740 (2006). Véase, además, Pueblo v. Prieto Maysonet, 103 DPR 113 (1974).

Entre los motivos más comunes por los cuales se solicita un nuevo juicio se encuentran: (1) que se emita un veredicto contra el peso de la prueba, (2) cuando se encuentra nueva evidencia y (3) que el jurado, el juez o los abogados incurran en conducta impropia. Establecido lo anterior debemos analizar como cuestión de umbral si la Regla 188(e), infra, es de aplicación al caso que tenemos ante nuestra consideración.

Según nuestro ordenamiento, la moción de nuevo juicio al amparo de la Regla 188(e) procede cuando le es imposible al acusado preparar una transcripción que le permita presentar su recurso de apelación. La Regla 188, 34 LPRA Ap. II, dispone, en lo aquí pertinente:

> El tribunal concederá un nuevo juicio por cualquiera de los siguientes fundamentos:
>
> ...
>
> (e) **que no fue posible obtener una transcripción de las notas taquigráficas de los procedimientos, debido a la muerte o incapacidad del taquígrafo o a la pérdida o destrucción de sus notas,** ni preparar en sustitución de dicha transcripción una exposición del caso en forma narrativa según se dispone en las Reglas 208 y 209. [No obstante, ambas reglas se derogaron por virtud de la Ley Núm. 251, Art. 13-diciembre 1995]. (Énfasis suplido).

En Pueblo v. Prieto Maysonet, supra, analizamos por primera vez el inciso (e) de la Regla 188 de Procedimiento Criminal. En aquella ocasión expresamos:

> La Regla 188 (e) es clara. Según sus términos no basta para justificar que se ordene la celebración de un nuevo juicio que no pueda obtenerse la transcripción de las pruebas. Debe demostrarse además la imposibilidad de "preparar en sustitución de dicha transcripción una exposición del caso en forma narrativa según dispone en las Regla 208 y 209 [no obstante, ambas reglas se derogaron por virtud de la Ley Núm. 251, Art. 13-diciembre 1995]". Pueblo v. Prieto Maysonet, supra, págs. 112-113.

Es forzoso concluir que la Regla 188(e) no aplica en este caso. Para la correcta aplicación del inciso (e) de dicha regla, se tiene que dar la muerte o incapacidad del taquígrafo, o la pérdida o destrucción de sus notas.

Por otro lado, la Regla 28(G) de las Reglas para la Administración del Tribunal de Primera Instancia, 4 LPRA Ap. II, regula lo concerniente a la regrabación y transcripción de la prueba oral:

> G. **La transcripción o regrabación de la prueba oral se limitará a los testimonios, objeciones de las partes y expresiones del tribunal producidos durante la presentación de pruebas.** Quedarán excluidos de la misma los informes, los argumentos de las partes, las instrucciones al Jurado y las objeciones a éstas, el acto de dictar sentencia y cualquier vista celebrada con posterioridad al fallo de culpabilidad, a menos que la parte interesada los designe y solicite, y estos le sean autorizados por el Tribunal Supremo o el Tribunal de Circuito de Apelaciones como materia relevante al recurso. (Énfasis suplido).

Según se desprende de la mencionada regla, la transcripción o regrabación de la prueba oral solo concierne a las expresiones hechas para el récord (*for the record*) no a las conversaciones en el estrado (*bench conference*). La Regla 28(G) es clara: La transcripción o regrabación de la prueba oral **se limitará** a "los testimonios, objeciones de las partes y expresiones del tribunal producidos durante la presentación de pruebas". Las conversaciones en el estrado no son parte del récord y por eso no se incluyen en la regrabación y transcripción de la prueba oral, salvo algunas instancias que discutimos más adelante. No podría ser de otra forma. Concluir lo contrario contraviene el propósito de confidencialidad que promueve las conversaciones en el estrado y desalentaría la utilidad que dicha figura tiene para resolver controversias o para que el juez mantenga el control de los procedimientos en sala.

Cuando estudiamos el significado que le da el *Black's Law Dictionary* a la figura en controversia, reafirmamos el carácter de confidencialidad que permea la conferencia en el estrado. El mencionado diccionario define la palabra *sidebar* como una posición al lado del estrado, donde los abogados pueden conferenciar con el juez fuera de los oídos de los jurados. (Traducción nuestra). ("*A position at the side of a judge's bench where counsel can confer with the judge* ***beyond the jury's earshot.***"). Sidebar, Black's Law Dictionary, 9th ed., [s.l]; Ed. Bryan A. Garner, 2009, págs. 1506-1507. (Énfasis suplido). De igual manera dispone que una *sidebar*

*conference* es una discusión entre el juez y los abogados, usualmente sobre una objeción evidenciaria, que el jurado no puede escuchar. (Traducción nuestra). ("*A discussion among the judge and counsel, usually over an evidentiary objection, **outside the jury's hearing**"). (Énfasis suplido). Sidebar Conference, Black's Law Dictionary, op. cit., pág. 1507.

Como se puede apreciar, la naturaleza de las conferencias en el estrado implica darles a las partes y al juez un espacio fuera del oído de los testigos, del jurado y del récord, que les permita conversar libremente y llegar a entendimientos, sin las formalidades que conlleva hablar en corte abierta, para el récord, y sin tener que desalojar al testigo o al jurado.

Recientemente adoptamos el Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (en adelante, PECAM), con el propósito de darle apertura a los procesos judiciales en nuestros tribunales. En la Regla 9 del mencionado reglamento dispusimos una serie de limitaciones a las transmisiones de varios procesos dentro de sala. Al respecto, la mencionada regla dispone:

> Para proteger el privilegio abogado cliente y el derecho de las partes a recibir representación legal en forma efectiva, no se permitirá la toma de fotografías ni grabar o difundir imágenes o audio durante los recesos decretados luego de iniciado el proceso judicial **ni durante las conferencias que se efectúen en el salón o en cámara, entre la representación legal de las partes, entre abogados y sus clientes, entre representantes legales de un**

**mismo cliente o entre el abogado o la abogada y el juez o la jueza en el estrado.** Tampoco estará permitido tomar video o fotos de los materiales o los documentos localizados en las mesas de dichos abogados o abogadas. (Énfasis suplido). Regla 9 del Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales, 4 LPRA Ap. XXXV.

La Regla 9 impone una restricción clara a la grabación o reproducción de cualquier índole de las conferencias en el estrado. Se advierte con facilidad el propósito de preservar la privacidad de lo que allí se converse.

Así pues, tenemos que concluir que el propósito de las conferencias ante el estrado es sostener una conversación en privado y fuera del récord, entre las partes y el juez. Ahora bien, eso no es una camisa de fuerza para que la parte, su representación legal, el Ministerio Público o el juez expongan para récord lo conversado en el estrado. Cualquiera de las partes puede exponer para el récord lo estipulado en la conversación en el estrado o cualquier objeción que entienda pertinente hacer. De esa manera se aseguran tener en el récord todo aquello que entienden pudiera ser útil en caso de una apelación posterior. Véase, A. Wilson Albright y S. Vance, Ten Tips for Making Your Case Appealable, 35 No. 2 Litig. 41, 43 ("If you go off the record for conversation and sidebar discussions, make sure you request to be put back on the record when ready. Also, make sure you memorialize any requests and rulings that occurred off the record when you go back on.")

Esto precisamente es lo que contempla nuestra regla de evidencia. Reafirmando lo expuesto por la anterior Regla 4, ahora Regla 105 de Evidencia, 32 LPRA Ap. IV, hemos expresado que no procede la revocación de un dictamen del Tribunal de Primera Instancia porque se admitió erróneamente una evidencia -testifical, documental, demostrativa o de cualquier índole- si no se hizo la correspondiente objeción en ese foro. Pueblo v. Ruiz Bosch, 127 DPR 762, 781 (1991); E.L. Chiesa Aponte, Reglas de Evidencia Comentadas, Ed. Situm, 2016, pág. 26.

En esa línea, la Regla 104(a) de Evidencia, 32 LPRA Ap.IV, establece que para que proceda una objeción, esta debe ser oportuna, específica y correcta. Una objeción es oportuna cuando se hace en el momento mismo en que surge el fundamento para objetar o inmediatamente después. Ernesto Chiesa, op. cit., pág. 27; Pueblo v. Bonilla Peña, 183 DPR 335, 350 (2011) ("es necesario determinar si hubo una objeción adecuada en el momento oportuno"). Además, la objeción debe ser específica, con el fin de invocar su fundamento. Esto es crucial para que el juez pueda aquilatar la corrección de la objeción. Ernesto Chiesa, op. cit., pág. 27.

Por último, la objeción debe ser correcta. Ello procura la emisión de sentencias correctas en derecho, impidiendo el "mal gasto de tiempo y recursos económicos al ayudar a reducir a un mínimo la posibilidad de que las sentencias dictadas sean anuladas en revisión por los tribunales apelativos, lo cual tiene la consecuencia indeseable de tener que ordenarse

la celebración de un nuevo proceso". <u>Pueblo v. Ruiz Bosch</u>, <u>supra</u>, pág. 782.

Lo anterior implica que los foros apelativos no "revocará[n] una decisión por razón de haberse admitido erróneamente una evidencia, si el fundamento invocado en instancia no era el correcto, aunque la evidencia fuera inadmisible por otros fundamentos". Ernesto Chiesa, <u>op. cit.</u>, pág. 28. Como expone el profesor Ernesto Chiesa, "esto no está reñido con la norma general de derecho apelativo de que la revisión se da contra el resultado y no contra sus fundamentos". Ernesto Chiesa, <u>op. cit.</u>, pág. 28. En cambio, "lo que se quiere fomentar es que las partes pongan al tribunal en posición de resolver correctamente las objeciones". Ernesto Chiesa, <u>op. cit.</u>, pág. 28.

En ese sentido, se precisa la utilización de la figura de la "oferta de prueba", en escenarios en donde se ataca la exclusión errónea de prueba testifical. Ernesto Chiesa, <u>op. cit.</u>, pág. 28. Ello tiene el propósito de que el tribunal apelativo conozca el contenido del testimonio excluido y de ese modo pueda evaluar el efecto del error de su exclusión. Ernesto Chiesa, <u>op. cit.</u>, págs. 28-29.

Ahora bien, se procura que las discusiones sobre admisibilidad de evidencia se hagan de tal forma que el jurado no quede contaminado de la discusión. Ello es así, particularmente cuando se trata de la exclusión de evidencia. Esto no quiere decir que haya que retirar al jurado para considerar una objeción, sino que el tribunal puede recurrir

a conminar a los abogados a acercarse al estrado y argumentar o recibir la oferta de prueba sin que el jurado se entere. Ernesto Chiesa, op. cit., pág. 30. Sin embargo, esto no significa que esas conversaciones queden automáticamente grabadas para el récord. Precisamente lo que reconoce el inciso (d) de la Regla 104 es la naturaleza confidencial de esas conversaciones.

En Pueblo v. López Rivera, 102 DPR 359, 368 (1974), expresamos que la parte que hace la oferta de la prueba "debe hacer constar en el récord, con toda la amplitud posible, lo que el testigo … hubiera declarado; u obtener que se haga un récord completo de la evidencia que trata de elucidarse por medio de la pregunta objetada". Íd. Ello tiene el fin de que el tribunal revisor "pueda determinar si la prueba, de haber sido creída por la corte inferior, hubiera justificado un resultado distinto del caso." Íd.

Esto fue precisamente lo que hizo el abogado de defensa del señor Ortiz Colón. A manera de ejemplo, expondremos una de las conversaciones en el estrado que se realizaron en el juicio del recurrido:

| Hora | 22 de febrero de 2012 | |
|---|---|---|
| 11:43:35 am | Observación de Lillian Centeno, taquígrafa del recurrido Ortiz Colón:<br><br>Fiscal y defensa se acercan al estrado.        Se | En este momento se concluye con la lista de la asistencia. Las partes no se acercan al estrado y    se    escucha perfectamente el audio de los candidatos a jurado diciendo presente. Luego, el alguacil habla y |

| | escucha lo que dice el juez. Es incomprensible lo que expresan la Fiscal y el abogado de defensa. | resume la cantidad de personas presentes. En el minuto 11:44:40 el abogado de defensa solicita acercarse y dice que hay 20 perentorias, y el juez pregunta por qué. El juez reafirma que son 10 perentorias por asesinato, por lo que sí son 20. Se escucha parcialmente lo que el abogado de defensa expresa y, en cuanto a lo que no se escucha, el juez indica que, sí entiende que hay suficientes candidatos, por lo que se puede deducir que está planteando que debían citar más candidatos. **Igualmente, se escucha al abogado de defensa decir que lo verterá para récord y así lo hizo posteriormente, al indicar que no está satisfecho con la cantidad de jurados y solicita que su objeción se anote para récord.** |
|---|---|---|

Queda claro que el abogado de defensa del recurrido sabía que lo conversado en el estrado no constaría en el récord. Por eso, tan pronto terminó la conversación en el estrado, el abogado de defensa le informó al juez y a la taquígrafa del tribunal que no estaba satisfecho con la cantidad de jurados.

De igual forma, según lo expuesto por el Decano Julio Fontanet Maldonado en su escrito, Los diez mandamientos de las objeciones, infra, si el juez o cualquiera de las partes

solicita discutir en el estrado los fundamentos de una objeción, el abogado o el Ministerio Público puede hacer constar para el récord lo allí discutido. Para asegurarse de que así sea, se deben tomar dos medidas cautelares:

> Primeramente, **cerciorarse que el récord o registro está grabando la discusión, de manera que estén en "récord" nuestros fundamentos.** En segundo lugar, debemos estar atentos al tono de voz de los participantes en la discusión, de manera que estemos seguros que ni el testigo, ni el jurado esté escuchando la discusión. (Énfasis suplido). J. Fontanet Maldonado, <u>Los Diez Mandamientos de las Objeciones</u>, 33 Rev. Jurídica U. Inter. P.R. 499, 517 (1999).

Como se desprende, el decano Fontanet Maldonado valida el principio de privacidad que permea las conversaciones en el estrado. Ahora bien, reconociendo lo práctico de dicho mecanismo para la tramitación de los procedimientos en sala, promueve que si se discuten en el estrado asuntos relacionados con cualquier objeción, la parte objetante o cualquier otra que interese puede solicitarle al juez que el **récord o registro esté grabando la discusión, de manera que los fundamentos consten en récord.**

En conclusión, las conversaciones en el estrado son confidenciales y no constan para el récord, salvo en dos instancias: Primero, que el juez, el Ministerio Público o la defensa, después de conversar en el estrado, expongan en sala abierta el interés de verter para el récord lo conversado en el estrado. Segundo, si el juez autoriza que se discutan en el estrado los fundamentos de una objeción, la parte objetante o cualquier parte interesada puede solicitar y el juez

autorizar bajo su discreción, que prosiga la grabación del récord. De ese modo se preserva lo allí conversado.

III

Por otro lado, al examinar el ordenamiento en la jurisdicción federal y su interpretación por parte de los tribunales, si bien es cierto que el Court Reporters Act, 28 USC sec. 753 (b), le requiere a las cortes federales la transcripción textual de todos los procedimientos criminales celebrados en corte abierta, ya sea por medios mecánicos, grabaciones electrónicas de sonido o cualquier otro método, un incumplimiento con dicho mandato no acarrea automáticamente la anulación de una sentencia ("failure fully to comply with this Act is usually found to be harmless error") 3 Wright & Miller, Federal Practice and Procedure, Sec. 589, (4ta ed. 2011).

En United States v. Di Canio, infra, el Tribunal de Apelaciones Federal del 5to Circuito, analizó el efecto de incumplir con el Court Reporters Act, supra, y expresó:

> Absence of a completely accurate transcript does not, without more, invalidate a conviction. A new trial will be ordered only if necessary, to protect a party's rights, and, hence, the defects of the record must be of a prejudicial character and not merely inconsequential inaccuracies or omissions. *United States v. Di Canio, 245 F.2d 713 (2d Cir. 1957).*

En esa dirección, la mayoría de los tribunales apelativos de los circuitos federales han establecido que, para obtener un nuevo juicio, el acusado debe demostrar que los errores en la transcripción provocan un perjuicio específico a su capacidad de perfeccionar su apelación. United States v.

Brand, 80 F.3d 560, 563 (1st Cir. 1996); United States v.
Sierra, 981 F.2d 123, 126-27 (3rd Cir. 1992); United States
v. Antoine, 906 F.2d 1379, 1381 (9th Cir. 1990); United States
v. Gallo, 763 F.2d 1504, 1530 (6th Cir. 1985).

En particular, en United States v. Brand, supra, el
Tribunal de Apelaciones para el Primer Circuito declinó
adoptar el estándar establecido en United States v. Selva,
F.2d 1303 (5to Cir. 1977). Ese estándar dispone, en lo aquí
pertinente, que en casos en los cuales a nivel apelativo el
imputado tenga una nueva representación legal, y sea probada
la omisión sustancial y significativa de la transcripción,
procede la petición de nuevo juicio sin tener que probar
perjuicio específico. En un claro distanciamiento de la norma
de Selva, el Tribunal de Apelaciones para el Primer Circuito
expresó lo siguiente:

> The majority of circuits construing § 753(b)(1)
> have held that to obtain reversal and a new trial,
> whether or not there is new appellate counsel,
> defendant must show specific prejudice to his
> ability to perfect an appeal, beyond mere non-
> compliance with the act. See United States v.
> Gallo, 763 F.2d 1504, 1530 (6th Cir. 1985), cert.
> denied, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d
> 798, and cert. denied, 474 U.S. 1069, 106 S.Ct.
> 828, 88 L.Ed.2d 800 (1986) (disagreeing with
> Selva); United States v. Sierra, 981 F.2d 123, 126-
> 27 (3rd Cir. 1992), cert. denied, 508 U.S. 967, 113
> S.Ct. 2949, 124 L.Ed.2d 696 (1993) (same); United
> States v. Antoine, 906 F.2d 1379, 1381 (9th Cir.),
> cert. denied, 498 U.S. 963, 111 S.Ct. 398, 112
> L.Ed.2d 407 (1990) (same). But see United States v.
> Preciado-Cordobas, 981 F.2d 1206, 1212 (11th Cir.
> 1993) (as successor court to former Fifth Circuit,
> bound by Selva). We have indicated preference for
> the majority view, see Sabatier v. Dabrowski, 586
> F.2d 866, 869 (1st Cir. 1978) (holding that if §
> 753(b)(1) applied to extradition proceedings,

reversal on account of non-compliance would require showing specific prejudice), and explicitly adopt it today. United States v. Brand, supra, págs. 563-564.

Por último, debemos tomar en consideración el impacto que tendría la aplicación del estándar establecido en Selva en la administración de los procedimientos judiciales. Dicha norma crearía un incentivo para que las personas convictas despidan a su representación legal en la etapa apelativa con el fin de obtener un nuevo juicio porque su nuevo abogado desconoce qué se habló fuera de récord en el Tribunal de Primera Instancia. Además, ante la desconfianza por la táctica antes mencionada, se desalentaría el uso de las conversaciones en el estrado, lo que tendría un impacto negativo en la administración y resolución de disputas en nuestros tribunales. Es por ello que rechazamos dicha norma y reafirmamos que para la concesión de un nuevo juicio se debe cumplir con los preceptos de la Reglas 188 y 192 de Procedimiento Criminal, supra, y su interpretación.

IV

En resumen, el caso ante nuestra consideración nos invita a resolver si la dificultad para escuchar varias conversaciones en el estrado automáticamente le confiere al señor Ortiz Colón el derecho a un nuevo juicio. Contestamos esa interrogante en la negativa.

En primer lugar, como ha quedado claramente evidenciado, la naturaleza de las conversaciones en el estrado es una oportunidad fuera del récord entre las partes y el juez para dilucidar cuestiones procesales y de trámite del caso en

cuestión. Además, le brinda al juez un mecanismo para mantener el control en sala y preservar el decoro de los procedimientos. Las conversaciones en el estrado no fueron concebidas para que fueran grabadas para el récord o que el jurado las escuchara.

Ahora bien, como expusimos, existen instancias en las cuales lo conversado en el estrado se puede preservar para el récord. En el caso ante nuestra consideración no se dio ninguna de ellas. De la grabación del juicio que consta en el legajo ante nuestra consideración no se desprende que la representación legal del señor Ortiz Colón haya solicitado antes de acercarse al estrado que se continuara la grabación del récord durante alguna de las conferencias allí. Tampoco se desprende que haya vertido en corte abierta las cerca de veinticinco conversaciones en el estrado que alega que no se escuchan con claridad. Eso no se le puede imputar a falta de conocimiento del abogado del recurrido. Como reseñamos, cuando la representación legal del recurrido difería de lo conversado en el estrado, lo hacía constar para el récord en corte abierta.

Por lo tanto, es forzoso concluir que la representación legal del señor Ortiz Colón era consciente de que para preservar lo conversado en el estrado tenía que verterlo para el récord, en corte abierta. En la alternativa, podía solicitar que se continuara la grabación del récord mientras conversaba en el estrado. En cambio, el abogado del señor Ortiz Colón no llevó a cabo ninguna gestión conducente a

preservar para el récord lo discutido en las conversaciones en el estrado aquí en disputa.

Por otra parte, en ninguno de sus escritos el señor Ortiz Colón estableció que no tener la transcripción de las conversaciones en el estrado le causó un perjuicio específico, que no le permitió perfeccionar su apelación. El hecho de que no se pueda entender bien lo conversado en el estrado o en corte abierta, sin probar el perjuicio específico que ello causó al recurrido Ortiz Colón, no es base por sí sola para la celebración de un nuevo juicio.

V

En la controversia ante nuestra consideración, un jurado encontró culpable al recurrido Ortiz Colón por el delito de asesinato en primer grado, por votación 9 a 3. Respecto a las violaciones de los Artículos 5.07 y 5.15 de la Ley de Armas, supra, el veredicto fue unánime.

En Pueblo v. Torres Rivera, 204 DPR 288(2020), seguimos la norma pautada por el Tribunal Supremo federal en Ramos v. Louisiana, 590 US__, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020), y reconocimos el "requisito de unanimidad como un componente esencial del derecho a un juicio por jurado". Pueblo v. Torres Rivera, supra, pág. 24. Por lo tanto, en vista de que el caso está ante nuestra consideración y la sentencia todavía no ha advenido final y firme, la norma pautada en Pueblo v. Torres Rivera, supra, de ordinario se haría extensiva a la sentencia emitida en contra del recurrido por el delito de asesinato en

primer grado, ya que no fue convicto mediante un veredicto unánime.

Por otro lado, en Pueblo v. Martínez Torres, 126 DPR 561 (1990), establecimos que existen dos situaciones en las cuales el tribunal apelativo puede revocar una convicción: (1) cuando el Tribunal de Primera Instancia cometió un error de derecho y (2) cuando la prueba del Ministerio Público, presentada y admitida, es insuficiente para sostener la convicción. Íd., pág. 571. Respecto al segundo escenario dejamos claro que, a diferencia del primero, "entra en operación la cláusula contra la doble exposición y se impide la celebración de otro proceso judicial por el mismo delito". Íd., pág. 571. "La razón de ser de este curso de acción radica en la impermisibilidad de ofrecerle al Fiscal una segunda oportunidad cuando inicialmente se le ofreció un proceso justo y adecuado para desfilar toda la prueba que pudo reunir y no lo hizo…". Íd. Véase, además, Pueblo v. Toro Martínez, 200 DPR 834, 846 (2018).

Ahora bien, tras la decisión de Ramos v. Louisiana, supra, los tribunales del estado de Louisiana han experimentado un flujo de solicitudes para que se aplique lo resuelto por el Tribunal Supremo federal. G. Canaparo, State Court Docket Watch: The Effect of Ramos v. Louisiana, The Federalist Society, 2020, https://fedsoc.org/commentary/publications/state-court-docket-watch-the-effect-of-ramos-v-louisiana (última visita, 24 de mayo de 2021). Por lo tanto, como Louisiana y Oregon

son las únicas jurisdicciones que, como Puerto Rico, permitían veredictos no unánimes antes de la determinación del Tribunal Supremo federal, resulta altamente persuasivo lo resuelto por los tribunales de estas otras dos jurisdicciones.

Entre los casos atendidos por los tribunales de Louisiana a la luz de Ramos v. Louisiana, supra, se encuentra State v. Kelly, 299 So.3d 1284 (2020), resuelto por el Tribunal de Apelaciones del Quinto Circuito de Louisiana. En Kelly, al igual que en el caso ante nuestra consideración, la convicción del acusado fue por mayoría y no por unanimidad. De igual manera, los acusados apelaron sus convicciones alegando, entre sus errores, insuficiencia de la prueba así como errores de derecho. El Tribunal de Apelaciones determinó que procedía la revocación de la convicción del Sr. Johnny Kelly, a la luz de Ramos v. Louisiana, supra. El tribunal llegó a esa conclusión luego de aplicar un escrutinio de dos partes. En primer lugar, evaluó la alegación de insuficiencia de la prueba. El tribunal explicó que de ser meritoria, entonces procedía la absolución del acusado y no se le podía acusar de nuevo por los mismos delitos. Ahora bien, si la alegación de insuficiencia de la prueba es inmeritoria, se procede al segundo paso; es decir, hay que atender los errores de derecho. Entonces, si el veredicto fue por mayoría y no por unanimidad, aplica Ramos v. Louisiana, supra, y se ordena la celebración de un nuevo juicio. State v. Kelly, supra, pág. 1287.

El tribunal explicó por qué se deben evaluar las alegaciones de insuficiencia de la prueba antes de considerar los errores de derecho:

> ... When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, **the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence.** State v. Hearold, 603 So. 2d 731, 734 (La. 1992). The reason for reviewing sufficiency of evidence first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S. Ct. 970, 67 L. Ed. 2d 30 (1981), if a reasonable trier of fact, viewing the evidence in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. **Therefore, consideration of sufficiency of evidence precedes consideration of other assignments of error which, if meritorious, result in vacating a conviction due to trial errors, and remand for possible retrial.**
>
> When, however, a claim of insufficiency of evidence is found to have merit, it results in a reversal due to a failure to prove a charge beyond a reasonable doubt, to which jeopardy attaches and the case cannot be retried. Thus, **sufficiency of evidence analysis also precedes consideration of whether a verdict must be vacated and remanded under Ramos v. Louisiana, 590 U.S. ____, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020).** (Énfasis suplido). State v. Kelly, supra, pág. 1287.

En el caso ante nuestra consideración, al igual que en State v. Kelly, supra, el veredicto del jurado, en uno de los delitos, fue por mayoría y no por unanimidad. Eso hace ese veredicto contrario a derecho y, como regla general, procedería su revocación y la celebración posterior de un nuevo juicio. En cambio, en ambos casos los acusados señalaron como error la insuficiencia de la prueba. Hay que evaluar ese señalamiento antes de analizar cualquier error de derecho.

State v. Kelly, supra. Por consiguiente, corresponde al foro apelativo intermedio evaluar los planteamientos de insuficiencia de la prueba que el señor Ortiz Colón planteó en su escrito de apelación, antes de determinar si procede un nuevo juicio a la luz de Ramos v. Lousiana, supra y Pueblo v. Torres Rivera, supra.

Del legajo elevado ante nuestra consideración surge que el peticionario presentó una apelación escueta, de cuatro páginas. En ella expuso únicamente los errores que, a su entender, cometió el foro primario y la alegada falta de una transcripción completa de los procedimientos. Escrito de Apelación, Sol. Cert., págs. 263-266. Por lo tanto, el foro apelativo intermedio no tuvo ante su consideración la argumentación en derecho sobre los errores levantados por el peticionario. En lugar de devolver el caso para otro juicio, debió ordenarle al peticionario que fundamentara su señalamiento de insuficiencia de prueba ya que podía hacerlo con la transcripción existente. De no hacerlo, entonces se entendería renunciado el señalamiento de error. Es decir, debió darle al señor Ortiz Colón la oportunidad de colocarlos en posición para resolver el señalamiento de insuficiencia de la prueba, pues si este tenía mérito no procedía en derecho ordenar un nuevo juicio sino la absolución. Como el Tribunal de Apelaciones no hizo eso, corresponde devolverle el caso para que complete el trámite y resuelva lo que proceda en derecho.

VI

Por los fundamentos antes expuestos, revocamos la Sentencia del Tribunal de Apelaciones. Las conferencias en el estrado no son parte de la prueba oral y por eso usualmente no constan en la transcripción de evidencia. Por eso no son necesarias para el debido perfeccionamiento de una apelación, salvo las excepciones que discutimos antes en la Parte II de esta Opinión. Es por ello que el foro apelativo intermedio erró al ordenar un nuevo juicio por la omisión en la transcripción de lo discutido en varias de esas conferencias en el estrado (*sidebars*). La transcripción estaba completa y el tribunal intermedio estaba en posición para evaluar el señalamiento de insuficiencia de la prueba que llevó a la convicción del peticionario.

El Tribunal de Apelaciones debió, en primer lugar, evaluar las alegaciones referentes a la insuficiencia de la prueba. De ser meritorias, procede la absolución del acusado y no se le puede acusar de nuevo por los mismos hechos. Ahora bien, si el señalamiento de insuficiencia de la prueba es inmeritorio, el tribunal deberá pasar al segundo paso; es decir, tendrá que atender los errores de derecho. En esa eventualidad, como la convicción por asesinato fue por mayoría y no por unanimidad del jurado, habría que aplicar la norma de Ramos v. Louisiana, supra, recogida en Pueblo v. Torres Rivera, supra, y el tribunal estaría obligado a ordenar la celebración de un nuevo juicio.

Por ello, se devuelve el caso al Tribunal de Apelaciones para que este complete el trámite del recurso, realice ese análisis y resuelva lo que proceda en derecho, según lo aquí dispuesto.

Se dictará Sentencia de conformidad.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado

EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

      v.

                          CC-2019-0334

Wilfredo Ortiz Colón

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 24 de mayo de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, revocamos la Sentencia del Tribunal de Apelaciones. Las conferencias en el estrado no son parte de la prueba oral y por eso usualmente no constan en la transcripción de evidencia. Por eso no son necesarias para el debido perfeccionamiento de una apelación, salvo las excepciones que discutimos antes en la Parte II de esta Opinión. Es por ello que el foro apelativo intermedio erró al ordenar un nuevo juicio por la omisión en la transcripción de lo discutido en varias de esas conferencias en el estrado (*sidebars*). La transcripción estaba completa y el tribunal intermedio estaba en posición para evaluar el señalamiento de insuficiencia de la prueba que llevó a la convicción del peticionario.

El Tribunal de Apelaciones debió, en primer lugar, evaluar las alegaciones referentes a la insuficiencia de la prueba. De ser meritorias, procede la absolución del acusado y no se le puede acusar de nuevo por los mismos hechos. Ahora bien, si el señalamiento de insuficiencia de la prueba es inmeritorio, el tribunal deberá pasar al segundo paso; es decir, tendrá que atender los errores de derecho.

En esa eventualidad, como la convicción por asesinato fue por mayoría y no por unanimidad del jurado, habría que aplicar la norma de Ramos v. Louisiana, supra, recogida en Pueblo v. Torres Rivera, supra, y el tribunal estaría obligado a ordenar la celebración de un nuevo juicio.

Por ello, se devuelve el caso al Tribunal de Apelaciones para que este complete el trámite del recurso, realice ese análisis y resuelva lo que proceda en derecho, según lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez concurre con el resultado. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente. La Jueza Presidenta Oronoz Rodríguez disiente y hace constar la expresión siguiente:

> Coincido en que para que una transcripción esté completa no siempre es necesario que se incluyan todas las conversaciones en el estrado. No obstante, ante los hechos particulares de este caso, en el cual se cuestiona precisamente el descargue de la responsabilidad profesional del representante legal, y lo que se pauta sobre la confidencialidad de las conversaciones en el estrado, me veo obligada a disentir.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

  Peticionario

    v.

             CC-2019-0334

Wilfredo Ortiz Colón

  Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Martínez Torres

En San Juan, Puerto Rico, a 24 de mayo de 2021.

  Nos corresponde resolver si para determinar que la transcripción de un juicio está completa es necesario incluir en ella lo conversado en las conferencias en el estrado.

  Si una parte interesa preservar lo discutido en el estrado que no consta para el récord, esta puede verterlo en corte abierta. De igual forma, si el juez autoriza que los fundamentos de una objeción se discutan en una conferencia en el estrado, cualquier parte interesada puede solicitar al juez que autorice que prosiga la grabación del récord. De ese modo se preserva lo allí conversado. Luego de analizar el

audio en este caso, concluimos que no está presente ninguna de esas situaciones, por lo que no es necesario incluir en la transcripción del juicio lo conversado en el estrado.

El Tribunal de Apelaciones se equivocó al ordenar un nuevo juicio porque la transcripción no contenía las conversaciones en el estrado. Revocamos y devolvemos el caso a ese foro para que lo evalúe en los méritos, con las instrucciones que constan en la Parte VI de esta Opinión.

I

El Sr. Wilfredo Ortiz Colón (señor Ortiz Colón) fue acusado por el delito de asesinato en primer grado y violación de los Art. 5.07 y Art. 5.15 de la Ley de Armas, 25 LPRA sec. 458f y 458n. Un jurado lo encontró culpable del delito de asesinato en primer grado, por votación de 9-3. Respecto a las violaciones de la Ley de Armas, el veredicto fue unánime. Así, el 14 de septiembre de 2012, el Tribunal de Primera Instancia lo sentenció a una condena de 150 años de prisión. Inconforme, el señor Ortiz Colón apeló ante el Tribunal de Apelaciones. El foro apelativo intermedio concluyó que el recurso de apelación se presentó fuera del término jurisdiccional. Igual suerte sufrió la correspondiente reconsideración.

Tras dicha determinación, el señor Ortiz Colón presentó ante el foro primario una moción al amparo de la Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, R.192.1, aduciendo inadecuada asistencia de representación legal en la etapa

apelativa. Solicitó que se le resentenciara para poder apelar oportunamente. El foro primario denegó dicha solicitud.

Luego de varios trámites procesales, el señor Ortiz Colón acudió ante nos mediante un recurso de certiorari. Allí nos solicitó que revocáramos la determinación del foro apelativo intermedio y permitiéramos que el foro primario lo resentenciara. Dictamos una sentencia dejando sin efecto la sentencia condenatoria impuesta contra el señor Ortiz Colón y devolvimos el caso al foro primario para que se le resentenciara. En cumplimiento con lo resuelto, el foro primario resentenció al señor Ortiz Colón bajo los mismos términos de la sentencia original.

Con el beneficio del nuevo término, el señor Ortiz Colón presentó una nueva apelación. Allí, planteó doce señalamientos de error, incluyendo planteamientos de insuficiencia de la prueba presentada, admisión errónea de evidencia y violación del debido proceso de ley. Entre los errores que señaló está la inconstitucionalidad del veredicto 9 a 3 en el caso por la infracción del Art. 106 del Código Penal de 2004, supra.

De igual manera, el señor Ortiz Colón presentó una Moción sobre reproducción de la prueba oral, en la que adujo que la presentación de una trascripción era el método más rápido y eficiente para la reproducción de la prueba oral. Tras evaluar esa solicitud, el foro primario autorizó la presentación de la transcripción de la prueba oral.

Así las cosas, el señor Ortiz Colón presentó una moción de nuevo juicio ante el Tribunal de Primera Instancia. Alegó que la transcripción originalmente realizada del juicio estaba incompleta, pues no contenía las conferencias en el estrado. **Asimismo, expuso que la grabación del juicio no podía utilizarse para completar la transcripción, debido a que, de las ciento veinticinco conferencias en el estrado identificadas, en más de veinticinco de ellas no se podía escuchar nada o era incomprensible lo expresado.** Concurrentemente, el señor Ortiz Colón presentó una moción ante el Tribunal de Apelaciones para que autorizara al foro primario a considerar la moción de nuevo juicio.

El 18 de octubre de 2016, el Tribunal de Apelaciones ordenó la paralización de la apelación ante su consideración y autorizó que se considerara la moción de nuevo juicio. Así, el 16 de mayo de 2017, el Tribunal de Primera Instancia celebró la vista correspondiente. En ella, el señor Ortiz Colón intentó presentar el testimonio de uno de sus representantes legales, el Lcdo. Oscar García Rivera. El testigo tenía la intención de narrar las gestiones realizadas para tratar de completar la transcripción de la prueba y argumentar que las lagunas en la transcripción original le impedían conocer las objeciones que levantó el primer representante legal del señor Ortiz Colón. Sin embargo, el foro primario no permitió el testimonio del licenciado García Rivera, por lo que los abogados del señor Ortiz Colón realizaron una oferta de prueba. Culminada la vista, el

Tribunal de Primera Instancia denegó la solicitud de nuevo juicio.

El 9 de junio de 2017, el señor Ortiz Colón presentó un recurso de certiorari ante el Tribunal de Apelaciones. Arguyó que el foro primario erró al no permitir el testimonio del licenciado García Rivera y al denegar la moción de nuevo juicio a pesar de la imposibilidad de realizar una transcripción de la prueba que incluyera lo hablado en las conferencias en el estrado. Posteriormente, este recurso fue consolidado con la apelación anteriormente presentada.

El 20 de febrero de 2019, el Tribunal de Apelaciones notificó una resolución en la que revocó la resolución recurrida y ordenó la celebración de un nuevo juicio. El foro apelativo intermedio se basó en el segundo estándar establecido en United States v. Selva, infra, como razón por la cual procedía la celebración de un nuevo juicio. ("En este caso, es forzoso concluir que estamos ante el segundo escenario que contempla el estándar adoptado en United States v. Selva, [infra], pues los actuales abogados del señor Ortiz Colon no fueron quienes lo representaron durante el juicio…".). Sentencia del TA, pág. 21, Ap., pág. 24. Además, resolvió que las fuentes alternas disponibles para crear una exposición narrativa de las argumentaciones en el estrado, tales como las notas del Ministerio Público y del primer representante legal del señor Ortiz Colón, eran inadecuadas y le pondrían en desventaja. El 7 de marzo de 2019, el

Ministerio Público presentó una moción de reconsideración. Esta fue denegada.

Insatisfecho con lo resuelto por el Tribunal de Apelaciones, el Ministerio Público acude ante nos mediante un recurso de certiorari. En él solicita que revoquemos el dictamen recurrido argumentando que el Tribunal de Apelaciones erró al ordenar un nuevo juicio por la ausencia del audio de las conversaciones en el estrado. Aduce que el recurrido lo **solicita sin demostrar que los errores en la transcripción le provocaron un perjuicio específico que le impidiera perfeccionar la apelación**. Alega que el foro apelativo intermedio erró al concluir que procede la celebración de un nuevo juicio porque "en ninguna de las conferencias ante el estrado, se pudo descifrar lo argumentado por cada una de las partes, ni las expresiones del juez", aunque en las regrabaciones de dichas conferencias se puede escuchar o descifrar lo que está ocurriendo en el estrado. Sol. Cert., pág. 8.

Trabada así la controversia, y expedido el auto solicitado, procedemos a resolver.

II

Nuestro ordenamiento permite que un tribunal conceda un nuevo juicio, ya sea a instancia propia, con el consentimiento del acusado, o a petición de este. Regla 187 de Procedimiento Criminal, 34 LPRA Ap. II. En esa dirección, hemos sido enfáticos en que la concesión de un nuevo juicio descansa en la sana discreción del tribunal sentenciador y que dicha

determinación no debe alterarse a menos que se demuestre un claro e inequívoco abuso de discreción. Pueblo v. Rodriguez, 193 DPR 987, 998 (2015); Pueblo v. Velázquez Colón, 174 DPR 304, 324 (2008); Pueblo v. Marcano Parrilla, 168 DPR 721, 740 (2006). Véase, además, Pueblo v. Prieto Maysonet, 103 DPR 113 (1974).

Entre los motivos más comunes por los cuales se solicita un nuevo juicio se encuentran: (1) que se emita un veredicto contra el peso de la prueba, (2) cuando se encuentra nueva evidencia y (3) que el jurado, el juez o los abogados incurran en conducta impropia. Establecido lo anterior debemos analizar como cuestión de umbral si la Regla 188(e), infra, es de aplicación al caso que tenemos ante nuestra consideración.

Según nuestro ordenamiento, la moción de nuevo juicio al amparo de la Regla 188(e) procede cuando le es imposible al acusado preparar una transcripción que le permita presentar su recurso de apelación. La Regla 188, 34 LPRA Ap. II, dispone, en lo aquí pertinente:

> El tribunal concederá un nuevo juicio por cualquiera de los siguientes fundamentos:
>
> ...
>
> (e) **que no fue posible obtener una transcripción de las notas taquigráficas de los procedimientos, debido a la muerte o incapacidad del taquígrafo o a la pérdida o destrucción de sus notas,** ni preparar en sustitución de dicha transcripción una exposición del caso en forma narrativa según se dispone en las Reglas 208 y 209. [No obstante, ambas reglas se derogaron por virtud de la Ley Núm. 251, Art. 13-diciembre 1995]. (Énfasis suplido).

En Pueblo v. Prieto Maysonet, supra, analizamos por primera vez el inciso (e) de la Regla 188 de Procedimiento Criminal. En aquella ocasión expresamos:

> La Regla 188 (e) es clara. Según sus términos no basta para justificar que se ordene la celebración de un nuevo juicio que no pueda obtenerse la transcripción de las pruebas. Debe demostrarse además la imposibilidad de "preparar en sustitución de dicha transcripción una exposición del caso en forma narrativa según dispone en las Regla 208 y 209 [no obstante, ambas reglas se derogaron por virtud de la Ley Núm. 251, Art. 13-diciembre 1995]". Pueblo v. Prieto Maysonet, supra, págs. 112-113.

Es forzoso concluir que la Regla 188(e) no aplica en este caso. Para la correcta aplicación del inciso (e) de dicha regla, se tiene que dar la muerte o incapacidad del taquígrafo, o la pérdida o destrucción de sus notas.

Por otro lado, la Regla 28(G) de las Reglas para la Administración del Tribunal de Primera Instancia, 4 LPRA Ap. II, regula lo concerniente a la regrabación y transcripción de la prueba oral:

> G. **La transcripción o regrabación de la prueba oral se limitará a los testimonios, objeciones de las partes y expresiones del tribunal producidos durante la presentación de pruebas.** Quedarán excluidos de la misma los informes, los argumentos de las partes, las instrucciones al Jurado y las objeciones a éstas, el acto de dictar sentencia y cualquier vista celebrada con posterioridad al fallo de culpabilidad, a menos que la parte interesada los designe y solicite, y estos le sean autorizados por el Tribunal Supremo o el Tribunal de Circuito de Apelaciones como materia relevante al recurso. (Énfasis suplido).

Según se desprende de la mencionada regla, la transcripción o regrabación de la prueba oral solo concierne a las expresiones hechas para el récord (*for the record*) no a las conversaciones en el estrado (*bench conference*). La Regla 28(G) es clara: La transcripción o regrabación de la prueba oral **se limitará** a "los testimonios, objeciones de las partes y expresiones del tribunal producidos durante la presentación de pruebas". Las conversaciones en el estrado no son parte del récord y por eso no se incluyen en la regrabación y transcripción de la prueba oral, salvo algunas instancias que discutimos más adelante. No podría ser de otra forma. Concluir lo contrario contraviene el propósito de confidencialidad que promueve las conversaciones en el estrado y desalentaría la utilidad que dicha figura tiene para resolver controversias o para que el juez mantenga el control de los procedimientos en sala.

Cuando estudiamos el significado que le da el *Black's Law Dictionary* a la figura en controversia, reafirmamos el carácter de confidencialidad que permea la conferencia en el estrado. El mencionado diccionario define la palabra *sidebar* como una posición al lado del estrado, donde los abogados pueden conferenciar con el juez fuera de los oídos de los jurados. (Traducción nuestra). ("*A position at the side of a judge's bench where counsel can confer with the judge **beyond the jury's earshot.**"). Sidebar, <u>Black's Law Dictionary</u>, 9th ed., [s.l]; Ed. Bryan A. Garner, 2009, págs. 1506-1507. (Énfasis suplido). De igual manera dispone que una *sidebar*

*conference* es una discusión entre el juez y los abogados, usualmente sobre una objeción evidenciaria, que el jurado no puede escuchar. (Traducción nuestra). ("*A discussion among the judge and counsel, usually over an evidentiary objection, **outside the jury's hearing**"*). (Énfasis suplido). Sidebar Conference, Black's Law Dictionary, op. cit., pág. 1507.

Como se puede apreciar, la naturaleza de las conferencias en el estrado implica darles a las partes y al juez un espacio fuera del oído de los testigos, del jurado y del récord, que les permita conversar libremente y llegar a entendimientos, sin las formalidades que conlleva hablar en corte abierta, para el récord, y sin tener que desalojar al testigo o al jurado.

Recientemente adoptamos el Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (en adelante, PECAM), con el propósito de darle apertura a los procesos judiciales en nuestros tribunales. En la Regla 9 del mencionado reglamento dispusimos una serie de limitaciones a las transmisiones de varios procesos dentro de sala. Al respecto, la mencionada regla dispone:

> Para proteger el privilegio abogado cliente y el derecho de las partes a recibir representación legal en forma efectiva, no se permitirá la toma de fotografías ni grabar o difundir imágenes o audio durante los recesos decretados luego de iniciado el proceso judicial **ni durante las conferencias que se efectúen en el salón o en cámara, entre la representación legal de las partes, entre abogados y sus clientes, entre representantes legales de un**

**mismo cliente o entre el abogado o la abogada y el juez o la jueza en el estrado.** Tampoco estará permitido tomar video o fotos de los materiales o los documentos localizados en las mesas de dichos abogados o abogadas. (Énfasis suplido). Regla 9 del Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales, 4 LPRA Ap. XXXV.

La Regla 9 impone una restricción clara a la grabación o reproducción de cualquier índole de las conferencias en el estrado. Se advierte con facilidad el propósito de preservar la privacidad de lo que allí se converse.

Así pues, tenemos que concluir que el propósito de las conferencias ante el estrado es sostener una conversación en privado y fuera del récord, entre las partes y el juez. Ahora bien, eso no es una camisa de fuerza para que la parte, su representación legal, el Ministerio Público o el juez expongan para récord lo conversado en el estrado. Cualquiera de las partes puede exponer para el récord lo estipulado en la conversación en el estrado o cualquier objeción que entienda pertinente hacer. De esa manera se aseguran tener en el récord todo aquello que entienden pudiera ser útil en caso de una apelación posterior. Véase, A. Wilson Albright y S. Vance, Ten Tips for Making Your Case Appealable, 35 No. 2 Litig. 41, 43 ("If you go off the record for conversation and sidebar discussions, make sure you request to be put back on the record when ready. Also, make sure you memorialize any requests and rulings that occurred off the record when you go back on.")

Esto precisamente es lo que contempla nuestra regla de evidencia. Reafirmando lo expuesto por la anterior Regla 4, ahora Regla 105 de Evidencia, 32 LPRA Ap. IV, hemos expresado que no procede la revocación de un dictamen del Tribunal de Primera Instancia porque se admitió erróneamente una evidencia -testifical, documental, demostrativa o de cualquier índole- si no se hizo la correspondiente objeción en ese foro. Pueblo v. Ruiz Bosch, 127 DPR 762, 781 (1991); E.L. Chiesa Aponte, Reglas de Evidencia Comentadas, Ed. Situm, 2016, pág. 26.

En esa línea, la Regla 104(a) de Evidencia, 32 LPRA Ap.IV, establece que para que proceda una objeción, esta debe ser oportuna, específica y correcta. Una objeción es oportuna cuando se hace en el momento mismo en que surge el fundamento para objetar o inmediatamente después. Ernesto Chiesa, op. cit., pág. 27; Pueblo v. Bonilla Peña, 183 DPR 335, 350 (2011) ("es necesario determinar si hubo una objeción adecuada en el momento oportuno"). Además, la objeción debe ser específica, con el fin de invocar su fundamento. Esto es crucial para que el juez pueda aquilatar la corrección de la objeción. Ernesto Chiesa, op. cit., pág. 27.

Por último, la objeción debe ser correcta. Ello procura la emisión de sentencias correctas en derecho, impidiendo el "mal gasto de tiempo y recursos económicos al ayudar a reducir a un mínimo la posibilidad de que las sentencias dictadas sean anuladas en revisión por los tribunales apelativos, lo cual tiene la consecuencia indeseable de tener que ordenarse

la celebración de un nuevo proceso". <u>Pueblo v. Ruiz Bosch</u>, <u>supra</u>, pág. 782.

Lo anterior implica que los foros apelativos no "revocará[n] una decisión por razón de haberse admitido erróneamente una evidencia, si el fundamento invocado en instancia no era el correcto, aunque la evidencia fuera inadmisible por otros fundamentos". Ernesto Chiesa, <u>op. cit.</u>, pág. 28. Como expone el profesor Ernesto Chiesa, "esto no está reñido con la norma general de derecho apelativo de que la revisión se da contra el resultado y no contra sus fundamentos". Ernesto Chiesa, <u>op. cit.</u>, pág. 28. En cambio, "lo que se quiere fomentar es que las partes pongan al tribunal en posición de resolver correctamente las objeciones". Ernesto Chiesa, <u>op. cit.</u>, pág. 28.

En ese sentido, se precisa la utilización de la figura de la "oferta de prueba", en escenarios en donde se ataca la exclusión errónea de prueba testifical. Ernesto Chiesa, <u>op. cit.</u>, pág. 28. Ello tiene el propósito de que el tribunal apelativo conozca el contenido del testimonio excluido y de ese modo pueda evaluar el efecto del error de su exclusión. Ernesto Chiesa, <u>op. cit.</u>, págs. 28-29.

Ahora bien, se procura que las discusiones sobre admisibilidad de evidencia se hagan de tal forma que el jurado no quede contaminado de la discusión. Ello es así, particularmente cuando se trata de la exclusión de evidencia. Esto no quiere decir que haya que retirar al jurado para considerar una objeción, sino que el tribunal puede recurrir

a conminar a los abogados a acercarse al estrado y argumentar o recibir la oferta de prueba sin que el jurado se entere. Ernesto Chiesa, op. cit., pág. 30. Sin embargo, esto no significa que esas conversaciones queden automáticamente grabadas para el récord. Precisamente lo que reconoce el inciso (d) de la Regla 104 es la naturaleza confidencial de esas conversaciones.

En Pueblo v. López Rivera, 102 DPR 359, 368 (1974), expresamos que la parte que hace la oferta de la prueba "debe hacer constar en el récord, con toda la amplitud posible, lo que el testigo … hubiera declarado; u obtener que se haga un récord completo de la evidencia que trata de elucidarse por medio de la pregunta objetada". Íd. Ello tiene el fin de que el tribunal revisor "pueda determinar si la prueba, de haber sido creída por la corte inferior, hubiera justificado un resultado distinto del caso." Íd.

Esto fue precisamente lo que hizo el abogado de defensa del señor Ortiz Colón. A manera de ejemplo, expondremos una de las conversaciones en el estrado que se realizaron en el juicio del recurrido:

| Hora | 22 de febrero de 2012 | |
|------|------------------------|---|
| 11:43:35 am | Observación de Lillian Centeno, taquígrafa del recurrido Ortiz Colón:<br><br>Fiscal y defensa se acercan al estrado. Se | En este momento se concluye con la lista de la asistencia. Las partes no se acercan al estrado y se escucha perfectamente el audio de los candidatos a jurado diciendo presente. Luego, el alguacil habla y |

| | | |
|---|---|---|
| | escucha lo que dice el juez. Es incomprensible lo que expresan la Fiscal y el abogado de defensa. | resume la cantidad de personas presentes. En el minuto 11:44:40 el abogado de defensa solicita acercarse y dice que hay 20 perentorias, y el juez pregunta por qué. El juez reafirma que son 10 perentorias por asesinato, por lo que sí son 20. Se escucha parcialmente lo que el abogado de defensa expresa y, en cuanto a lo que no se escucha, el juez indica que, sí entiende que hay suficientes candidatos, por lo que se puede deducir que está planteando que debían citar más candidatos. **Igualmente, se escucha al abogado de defensa decir que lo verterá para récord y así lo hizo posteriormente, al indicar que no está satisfecho con la cantidad de jurados y solicita que su objeción se anote para récord.** |

Queda claro que el abogado de defensa del recurrido sabía que lo conversado en el estrado no constaría en el récord. Por eso, tan pronto terminó la conversación en el estrado, el abogado de defensa le informó al juez y a la taquígrafa del tribunal que no estaba satisfecho con la cantidad de jurados.

De igual forma, según lo expuesto por el Decano Julio Fontanet Maldonado en su escrito, Los diez mandamientos de las objeciones, infra, si el juez o cualquiera de las partes

solicita discutir en el estrado los fundamentos de una objeción, el abogado o el Ministerio Público puede hacer constar para el récord lo allí discutido. Para asegurarse de que así sea, se deben tomar dos medidas cautelares:

> Primeramente, **cerciorarse que el récord o registro está grabando la discusión, de manera que estén en "récord" nuestros fundamentos.** En segundo lugar, debemos estar atentos al tono de voz de los participantes en la discusión, de manera que estemos seguros que ni el testigo, ni el jurado esté escuchando la discusión. (Énfasis suplido). J. Fontanet Maldonado, Los Diez Mandamientos de las Objeciones, 33 Rev. Jurídica U. Inter. P.R. 499, 517 (1999).

Como se desprende, el decano Fontanet Maldonado valida el principio de privacidad que permea las conversaciones en el estrado. Ahora bien, reconociendo lo práctico de dicho mecanismo para la tramitación de los procedimientos en sala, promueve que si se discuten en el estrado asuntos relacionados con cualquier objeción, la parte objetante o cualquier otra que interese puede solicitarle al juez que el **récord o registro esté grabando la discusión, de manera que los fundamentos consten en récord.**

En conclusión, las conversaciones en el estrado son confidenciales y no constan para el récord, salvo en dos instancias: Primero, que el juez, el Ministerio Público o la defensa, después de conversar en el estrado, expongan en sala abierta el interés de verter para el récord lo conversado en el estrado. Segundo, si el juez autoriza que se discutan en el estrado los fundamentos de una objeción, la parte objetante o cualquier parte interesada puede solicitar y el juez

autorizar bajo su discreción, que prosiga la grabación del récord. De ese modo se preserva lo allí conversado.

III

Por otro lado, al examinar el ordenamiento en la jurisdicción federal y su interpretación por parte de los tribunales, si bien es cierto que el Court Reporters Act, 28 USC sec. 753 (b), le requiere a las cortes federales la transcripción textual de todos los procedimientos criminales celebrados en corte abierta, ya sea por medios mecánicos, grabaciones electrónicas de sonido o cualquier otro método, un incumplimiento con dicho mandato no acarrea automáticamente la anulación de una sentencia ("failure fully to comply with this Act is usually found to be harmless error") 3 Wright & Miller, Federal Practice and Procedure, Sec. 589, (4ta ed. 2011).

En United States v. Di Canio, infra, el Tribunal de Apelaciones Federal del 5to Circuito, analizó el efecto de incumplir con el Court Reporters Act, supra, y expresó:

> *Absence of a completely accurate transcript does not, without more, invalidate a conviction. A new trial will be ordered only if necessary, to protect a party's rights, and, hence, the defects of the record must be of a prejudicial character and not merely inconsequential inaccuracies or omissions. United States v. Di Canio, 245 F.2d 713 (2d Cir. 1957).*

En esa dirección, la mayoría de los tribunales apelativos de los circuitos federales han establecido que, para obtener un nuevo juicio, el acusado debe demostrar que los errores en la transcripción provocan un perjuicio específico a su capacidad de perfeccionar su apelación. United States v.

Brand, 80 F.3d 560, 563 (1st Cir. 1996); United States v.
Sierra, 981 F.2d 123, 126-27 (3rd Cir. 1992); United States
v. Antoine, 906 F.2d 1379, 1381 (9th Cir. 1990); United States
v. Gallo, 763 F.2d 1504, 1530 (6th Cir. 1985).

En particular, en United States v. Brand, supra, el
Tribunal de Apelaciones para el Primer Circuito declinó
adoptar el estándar establecido en United States v. Selva,
F.2d 1303 (5to Cir. 1977). Ese estándar dispone, en lo aquí
pertinente, que en casos en los cuales a nivel apelativo el
imputado tenga una nueva representación legal, y sea probada
la omisión sustancial y significativa de la transcripción,
procede la petición de nuevo juicio sin tener que probar
perjuicio específico. En un claro distanciamiento de la norma
de Selva, el Tribunal de Apelaciones para el Primer Circuito
expresó lo siguiente:

> The majority of circuits construing § 753(b)(1)
> have held that to obtain reversal and a new trial,
> whether or not there is new appellate counsel,
> defendant must show specific prejudice to his
> ability to perfect an appeal, beyond mere non-
> compliance with the act. See United States v.
> Gallo, 763 F.2d 1504, 1530 (6th Cir. 1985), cert.
> denied, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d
> 798, and cert. denied, 474 U.S. 1069, 106 S.Ct.
> 828, 88 L.Ed.2d 800 (1986) (disagreeing with
> Selva); United States v. Sierra, 981 F.2d 123, 126-
> 27 (3rd Cir. 1992), cert. denied, 508 U.S. 967, 113
> S.Ct. 2949, 124 L.Ed.2d 696 (1993) (same); United
> States v. Antoine, 906 F.2d 1379, 1381 (9th Cir.),
> cert. denied, 498 U.S. 963, 111 S.Ct. 398, 112
> L.Ed.2d 407 (1990) (same). But see United States v.
> Preciado-Cordobas, 981 F.2d 1206, 1212 (11th Cir.
> 1993) (as successor court to former Fifth Circuit,
> bound by Selva). We have indicated preference for
> the majority view, see Sabatier v. Dabrowski, 586
> F.2d 866, 869 (1st Cir. 1978) (holding that if §
> 753(b)(1) applied to extradition proceedings,

reversal on account of non-compliance would require showing specific prejudice), and explicitly adopt it today. United States v. Brand, supra, págs. 563-564.

Por último, debemos tomar en consideración el impacto que tendría la aplicación del estándar establecido en Selva en la administración de los procedimientos judiciales. Dicha norma crearía un incentivo para que las personas convictas despidan a su representación legal en la etapa apelativa con el fin de obtener un nuevo juicio porque su nuevo abogado desconoce qué se habló fuera de récord en el Tribunal de Primera Instancia. Además, ante la desconfianza por la táctica antes mencionada, se desalentaría el uso de las conversaciones en el estrado, lo que tendría un impacto negativo en la administración y resolución de disputas en nuestros tribunales. Es por ello que rechazamos dicha norma y reafirmamos que para la concesión de un nuevo juicio se debe cumplir con los preceptos de la Reglas 188 y 192 de Procedimiento Criminal, supra, y su interpretación.

IV

En resumen, el caso ante nuestra consideración nos invita a resolver si la dificultad para escuchar varias conversaciones en el estrado automáticamente le confiere al señor Ortiz Colón el derecho a un nuevo juicio. Contestamos esa interrogante en la negativa.

En primer lugar, como ha quedado claramente evidenciado, la naturaleza de las conversaciones en el estrado es una oportunidad fuera del récord entre las partes y el juez para dilucidar cuestiones procesales y de trámite del caso en

cuestión. Además, le brinda al juez un mecanismo para mantener el control en sala y preservar el decoro de los procedimientos. Las conversaciones en el estrado no fueron concebidas para que fueran grabadas para el récord o que el jurado las escuchara.

Ahora bien, como expusimos, existen instancias en las cuales lo conversado en el estrado se puede preservar para el récord. En el caso ante nuestra consideración no se dio ninguna de ellas. De la grabación del juicio que consta en el legajo ante nuestra consideración no se desprende que la representación legal del señor Ortiz Colón haya solicitado antes de acercarse al estrado que se continuara la grabación del récord durante alguna de las conferencias allí. Tampoco se desprende que haya vertido en corte abierta las cerca de veinticinco conversaciones en el estrado que alega que no se escuchan con claridad. Eso no se le puede imputar a falta de conocimiento del abogado del recurrido. Como reseñamos, cuando la representación legal del recurrido difería de lo conversado en el estrado, lo hacía constar para el récord en corte abierta.

Por lo tanto, es forzoso concluir que la representación legal del señor Ortiz Colón era consciente de que para preservar lo conversado en el estrado tenía que verterlo para el récord, en corte abierta. En la alternativa, podía solicitar que se continuara la grabación del récord mientras conversaba en el estrado. En cambio, el abogado del señor Ortiz Colón no llevó a cabo ninguna gestión conducente a

preservar para el récord lo discutido en las conversaciones en el estrado aquí en disputa.

Por otra parte, en ninguno de sus escritos el señor Ortiz Colón estableció que no tener la transcripción de las conversaciones en el estrado le causó un perjuicio específico, que no le permitió perfeccionar su apelación. El hecho de que no se pueda entender bien lo conversado en el estrado o en corte abierta, sin probar el perjuicio específico que ello causó al recurrido Ortiz Colón, no es base por sí sola para la celebración de un nuevo juicio.

V

En la controversia ante nuestra consideración, un jurado encontró culpable al recurrido Ortiz Colón por el delito de asesinato en primer grado, por votación 9 a 3. Respecto a las violaciones de los Artículos 5.07 y 5.15 de la Ley de Armas, supra, el veredicto fue unánime.

En Pueblo v. Torres Rivera, 204 DPR 288(2020), seguimos la norma pautada por el Tribunal Supremo federal en Ramos v. Louisiana, 590 US__, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020), y reconocimos el "requisito de unanimidad como un componente esencial del derecho a un juicio por jurado". Pueblo v. Torres Rivera, supra, pág. 24. Por lo tanto, en vista de que el caso está ante nuestra consideración y la sentencia todavía no ha advenido final y firme, la norma pautada en Pueblo v. Torres Rivera, supra, de ordinario se haría extensiva a la sentencia emitida en contra del recurrido por el delito de asesinato en

primer grado, ya que no fue convicto mediante un veredicto unánime.

Por otro lado, en Pueblo v. Martínez Torres, 126 DPR 561 (1990), establecimos que existen dos situaciones en las cuales el tribunal apelativo puede revocar una convicción: (1) cuando el Tribunal de Primera Instancia cometió un error de derecho y (2) cuando la prueba del Ministerio Público, presentada y admitida, es insuficiente para sostener la convicción. Íd., pág. 571. Respecto al segundo escenario dejamos claro que, a diferencia del primero, "entra en operación la cláusula contra la doble exposición y se impide la celebración de otro proceso judicial por el mismo delito". Íd., pág. 571. "La razón de ser de este curso de acción radica en la impermisibilidad de ofrecerle al Fiscal una segunda oportunidad cuando inicialmente se le ofreció un proceso justo y adecuado para desfilar toda la prueba que pudo reunir y no lo hizo…". Íd. Véase, además, Pueblo v. Toro Martínez, 200 DPR 834, 846 (2018).

Ahora bien, tras la decisión de Ramos v. Louisiana, supra, los tribunales del estado de Louisiana han experimentado un flujo de solicitudes para que se aplique lo resuelto por el Tribunal Supremo federal. G. Canaparo, State Court Docket Watch: The Effect of Ramos v. Louisiana, The Federalist Society, 2020, https://fedsoc.org/commentary/publications/state-court-docket-watch-the-effect-of-ramos-v-louisiana (última visita, 24 de mayo de 2021). Por lo tanto, como Louisiana y Oregon

son las únicas jurisdicciones que, como Puerto Rico, permitían veredictos no unánimes antes de la determinación del Tribunal Supremo federal, resulta altamente persuasivo lo resuelto por los tribunales de estas otras dos jurisdicciones.

Entre los casos atendidos por los tribunales de Louisiana a la luz de Ramos v. Louisiana, supra, se encuentra State v. Kelly, 299 So.3d 1284 (2020), resuelto por el Tribunal de Apelaciones del Quinto Circuito de Louisiana. En Kelly, al igual que en el caso ante nuestra consideración, la convicción del acusado fue por mayoría y no por unanimidad. De igual manera, los acusados apelaron sus convicciones alegando, entre sus errores, insuficiencia de la prueba así como errores de derecho. El Tribunal de Apelaciones determinó que procedía la revocación de la convicción del Sr. Johnny Kelly, a la luz de Ramos v. Louisiana, supra. El tribunal llegó a esa conclusión luego de aplicar un escrutinio de dos partes. En primer lugar, evaluó la alegación de insuficiencia de la prueba. El tribunal explicó que de ser meritoria, entonces procedía la absolución del acusado y no se le podía acusar de nuevo por los mismos delitos. Ahora bien, si la alegación de insuficiencia de la prueba es inmeritoria, se procede al segundo paso; es decir, hay que atender los errores de derecho. Entonces, si el veredicto fue por mayoría y no por unanimidad, aplica Ramos v. Louisiana, supra, y se ordena la celebración de un nuevo juicio. State v. Kelly, supra, pág. 1287.

El tribunal explicó por qué se deben evaluar las alegaciones de insuficiencia de la prueba antes de considerar los errores de derecho:

> ... When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, **the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence.** State v. Hearold, 603 So. 2d 731, 734 (La. 1992). The reason for reviewing sufficiency of evidence first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S. Ct. 970, 67 L. Ed. 2d 30 (1981), if a reasonable trier of fact, viewing the evidence in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. **Therefore, consideration of sufficiency of evidence precedes consideration of other assignments of error which, if meritorious, result in vacating a conviction due to trial errors, and remand for possible retrial.**
>
> When, however, a claim of insufficiency of evidence is found to have merit, it results in a reversal due to a failure to prove a charge beyond a reasonable doubt, to which jeopardy attaches and the case cannot be retried. Thus, **sufficiency of evidence analysis also precedes consideration of whether a verdict must be vacated and remanded under Ramos v. Louisiana, 590 U.S. ____, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020).** (Énfasis suplido). State v. Kelly, supra, pág. 1287.

En el caso ante nuestra consideración, al igual que en State v. Kelly, supra, el veredicto del jurado, en uno de los delitos, fue por mayoría y no por unanimidad. Eso hace ese veredicto contrario a derecho y, como regla general, procedería su revocación y la celebración posterior de un nuevo juicio. En cambio, en ambos casos los acusados señalaron como error la insuficiencia de la prueba. Hay que evaluar ese señalamiento antes de analizar cualquier error de derecho.

State v. Kelly, supra. Por consiguiente, corresponde al foro apelativo intermedio evaluar los planteamientos de insuficiencia de la prueba que el señor Ortiz Colón planteó en su escrito de apelación, antes de determinar si procede un nuevo juicio a la luz de Ramos v. Lousiana, supra y Pueblo v. Torres Rivera, supra.

Del legajo elevado ante nuestra consideración surge que el peticionario presentó una apelación escueta, de cuatro páginas. En ella expuso únicamente los errores que, a su entender, cometió el foro primario y la alegada falta de una transcripción completa de los procedimientos. Escrito de Apelación, Sol. Cert., págs. 263-266. Por lo tanto, el foro apelativo intermedio no tuvo ante su consideración la argumentación en derecho sobre los errores levantados por el peticionario. En lugar de devolver el caso para otro juicio, debió ordenarle al peticionario que fundamentara su señalamiento de insuficiencia de prueba ya que podía hacerlo con la transcripción existente. De no hacerlo, entonces se entendería renunciado el señalamiento de error. Es decir, debió darle al señor Ortiz Colón la oportunidad de colocarlos en posición para resolver el señalamiento de insuficiencia de la prueba, pues si este tenía mérito no procedía en derecho ordenar un nuevo juicio sino la absolución. Como el Tribunal de Apelaciones no hizo eso, corresponde devolverle el caso para que complete el trámite y resuelva lo que proceda en derecho.

VI

Por los fundamentos antes expuestos, revocamos la Sentencia del Tribunal de Apelaciones. Las conferencias en el estrado no son parte de la prueba oral y por eso usualmente no constan en la transcripción de evidencia. Por eso no son necesarias para el debido perfeccionamiento de una apelación, salvo las excepciones que discutimos antes en la Parte II de esta Opinión. Es por ello que el foro apelativo intermedio erró al ordenar un nuevo juicio por la omisión en la transcripción de lo discutido en varias de esas conferencias en el estrado (*sidebars*). La transcripción estaba completa y el tribunal intermedio estaba en posición para evaluar el señalamiento de insuficiencia de la prueba que llevó a la convicción del peticionario.

El Tribunal de Apelaciones debió, en primer lugar, evaluar las alegaciones referentes a la insuficiencia de la prueba. De ser meritorias, procede la absolución del acusado y no se le puede acusar de nuevo por los mismos hechos. Ahora bien, si el señalamiento de insuficiencia de la prueba es inmeritorio, el tribunal deberá pasar al segundo paso; es decir, tendrá que atender los errores de derecho. En esa eventualidad, como la convicción por asesinato fue por mayoría y no por unanimidad del jurado, habría que aplicar la norma de Ramos v. Louisiana, supra, recogida en Pueblo v. Torres Rivera, supra, y el tribunal estaría obligado a ordenar la celebración de un nuevo juicio.

Por ello, se devuelve el caso al Tribunal de Apelaciones para que este complete el trámite del recurso, realice ese análisis y resuelva lo que proceda en derecho, según lo aquí dispuesto.

Se dictará Sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

                             CC-2019-0334

Wilfredo Ortiz Colón

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 24 de mayo de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, revocamos la Sentencia del Tribunal de Apelaciones. Las conferencias en el estrado no son parte de la prueba oral y por eso usualmente no constan en la transcripción de evidencia. Por eso no son necesarias para el debido perfeccionamiento de una apelación, salvo las excepciones que discutimos antes en la Parte II de esta Opinión. Es por ello que el foro apelativo intermedio erró al ordenar un nuevo juicio por la omisión en la transcripción de lo discutido en varias de esas conferencias en el estrado (*sidebars*). La transcripción estaba completa y el tribunal intermedio estaba en posición para evaluar el señalamiento de insuficiencia de la prueba que llevó a la convicción del peticionario.

El Tribunal de Apelaciones debió, en primer lugar, evaluar las alegaciones referentes a la insuficiencia de la prueba. De ser meritorias, procede la absolución del acusado y no se le puede acusar de nuevo por los mismos hechos. Ahora bien, si el señalamiento de insuficiencia de la prueba es inmeritorio, el tribunal deberá pasar al segundo paso; es decir, tendrá que atender los errores de derecho.

En esa eventualidad, como la convicción por asesinato fue por mayoría y no por unanimidad del jurado, habría que aplicar la norma de Ramos v. Louisiana, supra, recogida en Pueblo v. Torres Rivera, supra, y el tribunal estaría obligado a ordenar la celebración de un nuevo juicio.

Por ello, se devuelve el caso al Tribunal de Apelaciones para que este complete el trámite del recurso, realice ese análisis y resuelva lo que proceda en derecho, según lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez concurre con el resultado. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente. La Jueza Presidenta Oronoz Rodríguez disiente y hace constar la expresión siguiente:

> Coincido en que para que una transcripción esté completa no siempre es necesario que se incluyan todas las conversaciones en el estrado. No obstante, ante los hechos particulares de este caso, en el cual se cuestiona precisamente el descargue de la responsabilidad profesional del representante legal, y lo que se pauta sobre la confidencialidad de las conversaciones en el estrado, me veo obligada a disentir.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Wilfredo Ortiz Colón<br><br>Recurrido | CC-2019-0334 | Certiorari |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ

En San Juan, Puerto Rico, a 24 de mayo de 2021.

Disiento del dictamen mayoritario por entender que existen conversaciones medulares en el estrado en las que se discuten objeciones, sus argumentaciones y el dictamen del juez, las cuales constituyen un deber del tribunal garantizar que formen parte integral de lo que debe figurar en una transcripción de un juicio penal. Lo pautado hoy, automáticamente ignora esa realidad y lacera el derecho de la persona acusada a un debido proceso de ley. Por ello, respetuosamente disiento.

I

A.

Nuestro ordenamiento procesal penal permite beneficiar a la persona acusada con la celebración de un nuevo juicio,

siempre que se ponga de manifiesto alguno de los supuestos provistos por nuestro ordenamiento jurídico. Comúnmente, la concesión de un nuevo juicio ocurre cuando: (1) se ha descubierto nuevos hechos o nueva prueba; (2) el veredicto es contrario a derecho o a la prueba; o (3) algún miembro del jurado o funcionario del tribunal incurrió en conducta impropia. Reglas 188(a)-(d) y 192 de Procedimiento Criminal, 34 LPRA Ap. II. Asimismo, procede la concesión de un nuevo juicio cuando no es posible obtener una transcripción de la prueba debido a la muerte, incapacidad o ausencia del taquígrafo, ni se puede preparar una exposición narrativa del caso. Regla 188(e) de Procedimiento Criminal, supra; véase, Pueblo v. Prieto Maysonet, 103 DPR 102 (1974); Pueblo v. Reyes Morales, 93 DPR 607 (1966).

Finalmente, el inciso (f) de la Regla 188 de Procedimiento Criminal, supra, dispone que el tribunal podrá conceder un nuevo juicio "cuando, debido a **cualquier otra causa** de la cual no fuere responsable el acusado, éste no hubiere tenido un juicio justo e imparcial". (Énfasis suplido). En la interpretación de dicho inciso, este Tribunal expresó lo siguiente:

> No hay duda que con la adopción de las Reglas de Procedimiento Criminal se plasmó la tendencia de **liberalizar y expandir** el derecho a un nuevo juicio. Los nuevos fundamentos para la concesión de un nuevo juicio introducidos en la Regla 188 **ampliaron "sensiblemente el marco de acción y aún de discreción del tribunal para mejor salvaguardar los intereses de todo acusado"**. (Énfasis suplido). Pueblo v. Rodríguez, 193 DPR 987 (2015).

De modo que la Regla 188(f), supra, ratifica el reconocimiento expreso de la discreción del tribunal sentenciador de conceder un nuevo juicio. Pueblo v. Velázquez Colón, 174 DPR 304, 324 (2008); Pueblo v. Marcano Parrilla, 168 DPR 721, 740 (2006) (Per Curiam).

**B.**

Por otra parte, es reconocido el derecho de todo ciudadano a que un tribunal de superior jerarquía revise, como cuestión de derecho, las sentencias dictadas por los tribunales inferiores. Gran Vista I v. Gutiérrez y otros, 170 DPR 174, 185 (2007). En nuestra jurisdicción, si bien es cierto que el derecho a apelación en casos criminales es de naturaleza estatutario; no es menos cierto que hemos reconocido que una vez el derecho a apelación es incorporado a nuestro sistema de justicia por virtud de ley, éste pasa a formar parte del debido proceso de ley. Pueblo v. Esquilín Díaz, 146 DPR 808, 816 (1998); Pueblo v. Casiano Vélez, 105 DPR 33 (1976); Pueblo v. Prieto Maysonet, supra, pág. 106; Pueblo v. Serbia, 78 DPR 788, 791 (1955).

No cabe duda de que al establecerse firmemente en nuestro ordenamiento el derecho a apelar, hoy en día cobra mayor vigencia el razonamiento del Juez Frankfurter en su Opinión Concurrente en Griffin v. Illinois, 351 US 12 (1956), quien expresó que debe suponerse que el derecho a apelar es fundamental para proteger la vida y libertad. Íd., págs. 20-26. Por lo tanto, es un ingrediente indispensable del debido proceso de ley.

Es por ello que hemos reconocido que "[e]sta categoría del derecho a apelación garantiza, al igual que en la jurisdicción federal, que en aquellos casos en que el derecho a apelar se ha concedido, no se prive de él al acusado convicto de una manera arbitraria, irrazonable, discriminatoria o que viole las garantías constitucionales del debido proceso de ley e igual protección de las leyes". Pueblo v. Esquilín Díaz, supra, págs. 815-816. Por tanto, una vez la persona acusada ejercita su derecho a apelar una convicción criminal, las garantías constitucionales del debido proceso de ley deben permanecer intactas.

### C.

Por otra parte, los requisitos aplicables al perfeccionamiento de un recurso de apelación criminal están contenidos en las Reglas de Procedimiento Criminal, supra, el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B y la Ley de la Judicatura de 2003, 4 LPRA sec. 24 et seq. En el presente caso, es de particular importancia el mecanismo de la transcripción como requisito para perfeccionar el recurso de apelación, toda vez que el Sr. Wilfredo Ortiz Colón (señor Ortiz Colón) levantó errores sobre la apreciación de la prueba y la admisión errónea de la evidencia. Véase, Hernández v. San Lorenzo Const., 153 DPR 405, 422 (2001).

Las Reglas de Procedimiento Criminal fijan el plazo de treinta (30) días siguientes a la fecha en que la sentencia fue dictada, para presentar un escrito de apelación ante la secretaría del Tribunal de Primera Instancia que dictó la

sentencia o en la secretaría del Tribunal de Apelaciones. 34 LPRA Ap. II, R. 194. Asimismo, requiere determinado contenido en el escrito de apelación. 34 LPRA Ap. II, R. 196. Así, incoado el recurso de apelación, si el apelante interesa que se revise la prueba oral podrá solicitar que se ordene la transcripción, luego de que exprese las razones por las cuales considera que la transcripción es indispensable. 34 LPRA Ap. II, R. 201. Autorizada y ordenada la transcripción, el apelante debe solicitar al Tribunal de Primera Instancia la regrabación de los procedimientos. Íd. Así, el recurso de apelación se adjudicará a base a los documentos originales que obren en el expediente y con el beneficio de la transcripción de la prueba oral. 34 LPRA Ap.II, R. 199.

De forma muy similar, el Reglamento del Tribunal de Apelaciones provee el mecanismo para la presentación de la prueba oral desfilada ante el Tribunal de Primera Instancia mediante transcripción, con el objetivo de tomar una decisión sobre la revisión criminal solicitada. Véase, 4 LPRA Ap. XXII-B, R. 29 y 76.

Por otra parte, se ha denominado al Tribunal de Primera Instancia como un tribunal de récord con el deber de grabar los procedimientos, únicamente en alusión directa a la etapa del juicio. Ley de la Judicatura de 2003, 4 LPRA sec. 25a; Véase, Pueblo v. Soler, 163 DPR 180 (2004). Como dijéramos, la transcripción de dichas grabaciones se utiliza a los fines de revisar procedimientos del Tribunal de Instancia para cualquier recurso ante el Tribunal de Apelaciones o el

Tribunal Supremo de Puerto Rico y para cualquier otro uso permitido por ley. 4 LPRA sec. 25f.

En cuanto al contenido de las grabaciones, el inciso (g) de la Regla 28 de las Reglas para la Administración del Tribunal de Primera Instancia provee lo siguiente sobre la transcripción o regrabación de la prueba oral lo siguiente:

> (g) La transcripción o regrabación de la prueba oral se limitará a los testimonios, **objeciones de las partes y expresiones del tribunal producidos durante la presentación de pruebas.** Quedarán excluidos de la misma los informes, los argumentos de las partes, las instrucciones al jurado y las objeciones a éstas, el acto de dictar sentencia y cualquier vista celebrada con posterioridad al fallo de culpabilidad, a menos que la parte interesada los designe y solicite y éstos le sean autorizados por el Tribunal Supremo o el Tribunal de Circuito de Apelaciones como materia relevante al recurso. (Énfasis suplido). 4 LPRA Ap. II-B.

Se entiende, por tanto, que las objeciones a la prueba, las argumentaciones y la determinación del Juez sobre la admisibilidad de la prueba, constituyen **parte integral** de la regrabación y transcripción de los procedimientos. De lo contrario, el récord estaría incompleto. En ese sentido, obviar tales argumentaciones del récord privaría al apelante de nutrirse de éstos y de levantar señalamientos en torno a los mismos en la etapa apelativa. Al mismo tiempo, la omisión de las objeciones y de sus fundamentaciones trastocaría significativamente la capacidad de los tribunales apelativos de ejercer una revisión adecuada sobre los procedimientos. Ello, sin duda, laceraría el debido proceso de ley del apelante.

**D.**

Ciertamente, las objeciones de las partes durante la presentación de la prueba tienen como propósito la exclusión de evidencia inadmisible en el juicio. Regla 104 de Evidencia, 32 LPRA Ap. VI. Por tanto, cuando el procedimiento criminal se ventila ante un panel de jurado, las objeciones a la admisibilidad de la prueba cobran particular importancia debido a que sus argumentaciones podrían influenciar la mente de sus miembros. En ese sentido, se debe procurar que los procedimientos se lleven a cabo de tal forma que se evite que la evidencia inadmisible sea sugerida al jurado mediante preguntas, aseveraciones u ofertas de prueba. Íd. Así, el jurado tendrá ante sí únicamente evidencia admisible a la hora de emitir su veredicto. Véase, C., Montz, <u>Trial objections from beginning to end: The handbook for civil and criminal trials</u>, 29 Pepp. L. Rev. 243 (2001-2002), pág. 246.

Si una parte considera que el tribunal admitió evidencia erróneamente deberá "presentar una objeción oportuna, específica y correcta". Regla 104 de Evidencia, <u>supra</u>.[1] Esto significa que la parte afectada por una admisión

---

[1] Sobre el propósito de la Regla 4 de Evidencia, hoy, la Regla 104, <u>supra</u>, este Tribunal expresó:

El propósito u objetivo que persigue la transcrita Regla 4, al exigir la oportuna y correcta objeción de la evidencia por la parte perjudicada por la introducción de la misma, no sólo resulta ser obvio sino que [sic] altamente beneficioso a una eficiente y sana administración de la justicia. Dicho requisito, naturalmente, ayuda a evitar que los tribunales de instancia incurran innecesariamente en errores relativos a

errónea, como regla general, no puede hacer un señalamiento de error en apelación respecto a dicha admisión, a menos que surja del récord la formulación de una objeción. C. Ramos González & E. Vélez Rodríguez, _Teoría y práctica de la litigación en Puerto Rico_, San Juan, Michie of Puerto Rico, Inc., 1996, pág. 86; véase, Regla 105 de Evidencia, _supra_; _Pueblo v. Bonilla Peña_, 183 DPR 335, 349 (2011).

En ese sentido, tanto nuestro ordenamiento procesal penal como la práctica judicial, proveen varios mecanismos para objetar la admisibilidad de la prueba cuando el procedimiento criminal se ventila ante un panel de jurado. Así, por ejemplo, antes del juicio, se puede presentar una

---

la admisión de evidencia al contar éstos, a tiempo, con una correcta exposición del derecho aplicable conforme el mejor criterio y conocimiento de los abogados de las partes. Ello tiene el efecto no sólo de promover la celebración de procesos justos y la emisión de sentencias correctas en derecho sino que impide el malgasto de tiempo y recursos económicos al ayudar a reducir a un mínimo la posibilidad de que las sentencias dictadas sean anuladas en revisión por los tribunales apelativos, lo cual tiene la consecuencia indeseable de tener que ordenarse la celebración de un nuevo proceso. Demostrado por la parte afectada, por la errónea admisión de evidencia a nivel de instancia, que efectivamente interpuso 'oportuna y correcta objeción' a la misma, tendrá entonces el tribunal apelativo el deber de determinar si la admisión errónea de dicha evidencia 'fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita. _Pueblo v. Torres Villafañe_, 143 DPR 474 (1997) (Sentencia), Op. de Conformidad emitida por el juez asociado señor Corrada del Río, citando a _Pueblo v. Ruiz Bosch_, 127 DPR 762, 781-782 (1991).

moción in limine[2] o una moción de supresión de evidencia[3]. Por otra parte, una vez comenzado el juicio, es práctica saludable solicitar al tribunal que excuse al jurado de sala, de manera que la parte que levanta la objeción pueda argumentarla y la otra parte replicar sin mayor cuidado de influenciar indebidamente la mente del jurado. J. Fontanet Maldonado, Los diez mandamientos de las objeciones, 33 Rev.Jur.Inter. 499, 514 (1999). Asimismo, es práctica común en la profesión que al objetar o replicar, se solicite autorización al tribunal para acercarse al estrado y argumentar la objeción. Íd., pág. 516. "[T]o preclude inadmissible evidence from being presented to the jury through argument, the advocates should request permission to approach the trial court at "sidebar" to make their arguments". L. Laffety, Trail objections: The way of advocacy, 11 Suffolk J. Trial & App. Advoc. 1, 4, (2006).

Ahora bien, el mero hecho de que la mejor práctica sea que el jurado no se vea influenciado por las argumentaciones de las objeciones, no significa que éstas no son de suma importancia para la revisión de un procedimiento criminal. Al contrario, cuando así se proceda, se deben tomar ciertas medidas cautelares cuando se opte por este último método. A

---

[2] Una moción eliminatoria o in limine es una solicitud que se presenta antes del juicio impugnando la admisibilidad de la prueba anunciada. La concesión de dicha moción es una que cae dentro del ámbito que tiene el tribunal para dirigir el proceso judicial. Véase, McCormick on Evidence, Seventh Edition, West Publishing, 2014, págs. 122-123.

[3] Regla 232 de Procedimiento Criminal, 34 LPRA Ap. II.

saber: (1) **cerciorarse que el récord o registro está grabando la discusión**, de manera que estén en "récord" los fundamentos de la objeción, así como el "ruling" del tribunal a esos efectos; y (2) estar atentos al tono de voz de los participantes en la discusión, de manera que ni el testigo, ni el jurado esté escuchando la discusión. Íd. De esta manera, la objeción a la admisión de la prueba es preservada en el récord, garantizándole a su vez al apelante, el derecho a un debido proceso de ley en etapa apelativa. Como adelantamos, ello es imprescindible tanto para salvaguardar los derechos del apelante, como para garantizar una revisión adecuada de parte de los tribunales apelativos.

## II

Como sabemos, el juicio en este caso se celebró ante un panel de jurado, por lo que las objeciones y los planteamientos de derecho se realizaron en el estrado. Aun cuando dicha práctica es perfectamente válida, el señor Ortiz Colón arguye que es imposible obtener una transcripción completa de la prueba dado que la grabación de los procedimientos no recoge de manera audible e inteligible tales discusiones. Súmese el hecho de que cuenta con nueva representación legal a nivel apelativo. ¿Qué más perjuicio pretende la Mayoría de este Tribunal que el señor Ortiz Colón demuestre haber sufrido, que la falta de un audio claro de las objeciones y argumentaciones legales ante el estrado para preservar su derecho a apelación? Ninguno.

Desafortunadamente, una Mayoría de este Tribunal hoy resuelve que las conversaciones en el estrado no forman parte de la prueba a transcribirse en un juicio penal. Causa preocupación que el Tribunal optara por despachar livianamente la controversia bajo fundamentos técnicos y generalizados.

Por un lado, este Tribunal descartó automáticamente la posibilidad de un nuevo juicio porque no se configuraron los elementos para ello al amparo del inciso (e) de la Regla 188 de Procedimiento Criminal, supra.[4] Aun cuando ello fuera correcto, el Tribunal no vislumbró otras particularidades del caso que merecían la atención para la concesión de un nuevo juicio, al palio del inciso (f) de la misma norma reglamentaria.

Particularmente, la Mayoría de este Tribunal recurrió al argumento de confidencialidad que promueven las conferencias en el estrado para descartar, sin más, la inclusión de las discusiones sobre las objeciones a la admisión de la prueba y otras argumentaciones pertinentes de derecho que se realizan en el estrado. Según la Opinión Mayoritaria, las conferencias en el estrado se utilizan como mecanismo para atender controversias y asuntos procesales

---

[4]El inciso (e) de la Regla 188 de Procedimiento Criminal dispone que procederá la concesión de un nuevo juicio cuando "no fue posible obtener una transcripción de las notas taquigráficas de los procedimientos, debido a la muerte o incapacidad del taquígrafo o a la pérdida o destrucción de sus notas, ni preparar en sustitución de dicha transcripción una exposición del caso en forma narrativa según se dispone en las Reglas 208 y 209". 34 LPRA Ap. II.

del caso fuera del oído del jurado. Aun cuando lo anterior es correcto, ello no puede convertirse en un automatismo y traducirse a todo lo que allí se discute. No cabe duda de que este Tribunal le restó importancia a la peculiaridad que presenta el caso de epígrafe, en el cual existe un reclamo de acceso a los asuntos de derecho discutidos y resueltos en el estrado que no formaron parte de la transcripción.[5]

Además, este Tribunal soslaya lo claramente establecido en las reglas de administración de los tribunales en cuanto a que las objeciones de las partes y las expresiones del tribunal producidos durante la presentación de la prueba forman parte de la grabación y posterior transcripción de la prueba oral. Regla 28(g) de las Reglas para la Administración del Tribunal de Primera Instancia, supra. De modo que lo propuesto por la Opinión Mayoritaria resulta ser contradictorio a la reglamentación vigente y, peor aún, en

---

[5]Precisamente, el Tribunal de Apelaciones plasmó lo siguiente:

> Este Tribunal se dio a la tarea de escuchar cada una de las regrabaciones de los once (11) días de juicio y en efecto, pudimos corroborar lo planteado por el Peticionario. Incluso, podemos establecer que en ninguna de las conferencias ante el estrado, este Tribunal pudo descifrar lo argumentado por cada una de las partes, ni las expresiones del juez. Según expone el señor Ortiz Colón en su recurso, en el récord existen sobre ciento veinticinco (125) conferencias ante el estrado, de las cuales solo se escuchan parcialmente las expresiones del juez, la defensa o de los fiscales. El r[é]cord no contiene una argumentación ininterrumpida e inteligible de lo argüido ante el estrado por las partes en cuanto a cada una de las objeciones, así como de los fundamentos del Tribunal y sus determinaciones en cuanto a las objeciones.

clara violación al derecho del recurrido de preservar una objeción levantada y argumentada oportuna y correctamente en miras de señalar el asunto a nivel apelativo. Es por ello que, distinto a la Mayoría de este Tribunal, opino que las objeciones a la prueba, su argumentación y la determinación del Juez sobre la procedencia o no de éstas, que se discuten en el estrado, forman parte vital de la regrabación y transcripción en un juicio penal. Ello, independientemente de si el Ministerio Público o el representante legal de la defensa solicitan tal grabación. Lo anterior, no solo porque así lo establecen las normas reglamentarias jurídicas, sino porque la inclusión de éstas en la transcripción de la prueba incide en el derecho del apelante de perfeccionar su recurso de apelación y, en consecuencia, en su derecho al debido proceso de ley.

La Opinión Mayoritaria intenta hacer una distinción de circunstancias en las que conversaciones en el estrado sí formarán parte de las grabaciones y consecuentemente de las transcripciones. Sin embargo, las circunscriben a que alguna parte lo solicite. A modo de ejemplo, qué hacemos en escenarios como el de autos en que se trata de una nueva representación legal a nivel apelativo. Es decir, el nuevo abogado no participó del juicio y, como tal, no tuvo oportunidad de solicitar tales grabaciones. Lo que plantea la Opinión es que, si el abogado que participó en el juicio no solicitó la grabación de tales asuntos de derecho atendidos en el estrado, el acusado y su nueva

representación legal se quedan sin oportunidad de una revisión apelativa adecuada. A fin de cuentas, con este enfoque se perjudica al convicto que interesa revisar su convicción, pues se queda sin la oportunidad de contar con tales porciones pertinentes a su proceso de revisión. No podemos olvidar que los derechos y las garantías en los procesos penales son de los acusados y acusadas y no de los abogados y las abogadas. Por ello, el derecho apelativo, circunscrito al debido proceso de ley, no debe recaer en si un abogado solicitó o no la grabación de cierta parte esencial del proceso judicial, sino en la responsabilidad de los tribunales. Un sistema responsable, adecuado y eficiente requiere que los asuntos de derecho resueltos por el tribunal consten para el récord. ¿Por qué castigar a la parte o a su actual abogado por las decisiones o manejo del caso por su representante anterior?

Súmese el hecho de que, una vez finalizado su juicio, el señor Ortiz Colón sufrió los efectos de una inadecuada representación legal a nivel apelativo. Precisamente, por parte del abogado que lo representó durante el juicio. Tal negligencia del abogado desembocó en la desestimación de un primer recurso de apelación[6] y en la presentación de una querella disciplinaria. Estos hechos llevaron al señor Ortiz Colón a presentar una moción al amparo de la Regla 192.1 de

---

[6]*Pueblo de Puerto Rico v. Wilfredo Ortiz Colón*, KLAN201201722.

Procedimiento Criminal,[7] mediante la cual logró ser resentenciado el 20 de julio de 2016 por disposición nuestra,[8] activándose nuevamente los términos para acudir en apelación. A raíz de ello, es que la nueva representación legal del señor Ortiz Colón intenta presentar un recurso de apelación. No obstante, se topa con la realidad de que muchas de las objeciones, argumentaciones y disposiciones del juez que presidió el juicio no formaron parte de la grabación y, consecuentemente, de la transcripción. Se alega que hubo sobre ciento veinticinco (125) conferencias en el estrado, de las cuales al menos veinticinco (25) no son audibles ni comprensibles.[9] Así pues, en este caso en particular, resultaría oneroso colocar en manos de la parte contraria y hasta de un abogado anterior del cual se querelló, la responsabilidad de reconstruir una exposición narrativa de las objeciones y argumentaciones aquí en pugna. Ello, ante el hecho de que tales eventos procesales no formaron parte de la transcripción. De este modo, el derecho a apelar del señor Ortiz Colón, así como su debido proceso de ley fueron violados.

Era responsabilidad del Tribunal de Primera Instancia como "tribunal de récord", tomar las medidas necesarias

---

[7] 34 LPRA Ap. II.

[8] _Pueblo de Puerto Rico v. Wilfredo Ortiz Colón_, CC-2015-0315.

[9] Según los tres (3) discos compactos que fueron unidos al recurso de _certiorari_, el juicio en su fondo duró diez (10) días.

para que las partes esenciales del procedimiento quedaran debidamente grabadas e incorporadas en el récord del caso; pero no lo hizo. En ese sentido, este Tribunal debió confirmar al Tribunal de Apelaciones y llevar un mensaje a los foros de primera instancia, como partícipes de la justicia y garantizadores del debido proceso de ley de todo litigante, en torno a la necesidad de preservar el récord de conversaciones medulares discutidas en el estrado.

Finalmente, la Opinión Mayoritaria opta por devolver el caso al Tribunal de Apelaciones para que atienda, en primer lugar, los señalamientos de error dirigidos a la apreciación de la prueba respecto a la convicción por el delito de asesinato en primer grado, no así en cuanto a las convicciones por la Ley de Armas. De no proceder tales señalamientos, pues resuelve que procedería la celebración de un nuevo juicio exclusivamente sobre esa convicción por no mediar una votación unánime de culpabilidad.

Ahora bien, ¿cómo el Tribunal de Apelaciones descargará responsable y efectivamente su función revisora con una transcripción incompleta? El tribunal apelativo intermedio atenderá unos señalamientos a medias, pues no contará con el beneficio de la totalidad de los asuntos atendidos en el juicio. Ello, constituye una violación crasa al debido proceso de ley del convicto que intenta apelar la sentencia penal en su contra y una transgresión al ejercicio de revisión del Tribunal de Apelaciones. Ante

este escenario, no cabe más que ordenar **la celebración de un nuevo juicio por todos los delitos imputados**.

**III**

Por entender que la postura acogida por la Mayoría de este Tribunal despoja al señor Ortiz Colón de su derecho a apelar adecuadamente la convicción criminal que pesa en su contra, respetuosamente disiento.

Luis F. Estrella Martínez<br>
Juez Asociado